153 F.3d 356
 INTERNATIONAL COLLEGE OF SURGEONS, a not-for-profit
corporation, United States section of the International
College of Surgeons, a not-for-profit corporation, Robin
Construction Corporation, a for-profit corporation,
Plaintiffs-Appellants,
v.
CITY OF CHICAGO, a municipal corporation, Commission on
Chicago Landmarks, Administrative Agency of the City of
Chicago, Peter C.B. Bynoe, Commission Chairman, et al.,
Chicago Plan Commission, and its Commissioners, Reuben L.
Hedlund, et al., Defendants-Appellees.
 Nos. 95-1293, 95-1315.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 6, 1995.
Decided Aug. 1, 1996.
On Remand from the Supreme Court of the United States, Dec.
15, 1997.
Argued on Remand June 3, 1998.
Decided Aug. 6, 1998.
 
 Richard J. Brennan (argued), Kimball R. Anderson, Darcy J. Bogenrief, Thomas C. Cronin, Winston & Strawn, Chicago, IL, David B. Love, Seyfarth, Shaw, Fairweather & Geraldson Daniel L. Houlihan, Houlihan & Associates, for Plaintiffs-Appellants.
 Lawrence Rosenthal, Benna R. Solomon (argued), Anne Berleman Kearney, Sonja D. Rajkovich, Brian L. Crowe, Office of the Corporation Counsel, Appeals Div., Chicago, IL, for Defendants-Appellees.
 Jeffrey M. Glass, Reuben L. Hedlund, Hedlund & Hanley, Chicago, IL, for Amici Curiae.
 Before BAUER, EASTERBROOK and RIPPLE, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 This case is before the court on remand from the Supreme Court of the United States. In our earlier opinion, we reversed the judgment of the district court and remanded the case with instructions that it be remanded to state court on the ground that the district court lacked jurisdiction. See International College of Surgeons v. City of Chicago, 91 F.3d 981 (7th Cir.1996). The Court reversed our decision and held that the district court had jurisdiction over this case. See City of Chicago v. International College of Surgeons, 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). The Supreme Court then remanded the case to this court and directed us to consider whether abstention principles required the district court to decline to exercise jurisdiction over this case and whether the district court should have exercised its discretion to decline to exercise supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367(c). In their statement filed pursuant to Circuit Rule 54, the parties requested that we permit rebriefing and oral argument. We accepted that recommendation and the new briefs have been considered and the case heard at oral argument. We conclude that, under prevailing principles, the district court was not required to abstain from exercising jurisdiction over this case. In addition, we hold that the appellants, International College of Surgeons ("ICS") and Robin Construction Corporation, have waived their contention that the district court should have declined to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c); that contention was not raised in the district court. Accordingly, we reach the merits of this case and affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 
 3
 We shall assume familiarity with the facts set out in our earlier opinion, see International College of Surgeons, 91 F.3d at 985-86, and in the opinion of the Supreme Court, see International College of Surgeons, 118 S.Ct. at 527-29. We shall limit our rendition here to the matters at hand.
 
 
 4
 ICS seeks to demolish its two buildings on Lake Shore Drive in Chicago. The City denied ICS' requests for demolition permits. ICS then filed two lawsuits in state court contesting the City's denial on the ground that the City's actions violated both the state and federal constitutions. In addition, ICS sought on-the-record review of the determinations of the City's Landmarks Commission with respect to its application for demolition permits.
 
 
 5
 The City removed those actions to federal court. Those actions ultimately were consolidated with a declaratory judgment action filed by ICS in federal district court. On December 30, 1994, the district court entered summary judgment in favor of the City. The court held that the City ordinance at issue did not violate either the federal or state constitution and that the findings of the City's Landmarks Commission were supported by the evidence and were not arbitrary and capricious. The district court dismissed the declaratory judgment case with prejudice as moot but with leave to reinstate if the district court's judgments in the other two cases were reversed or remanded on appeal.
 
 
 6
 In our earlier opinion, we held that a federal district court lacked jurisdiction over a case containing state law claims for on-the-record review of local administrative action. See International College of Surgeons, 91 F.3d at 986-94. Accordingly, we reversed the judgment of the district court with instructions to remand the case to the Circuit Court of Cook County. See id. at 994. The Supreme Court, however, held that a case containing claims that local administrative action violates federal law, but also containing state law claims for on-the-record review of the administrative findings, can be removed to federal district court because such state law claims fall within the federal courts' supplemental jurisdiction under 28 U.S.C. § 1367(a). See International College of Surgeons, 118 S.Ct. at 529-33. The Court therefore reversed our earlier judgment and remanded the case to this court for further proceedings. On remand, the Court has directed us to consider two alternative contentions raised by ICS: (1) whether the district court should have abstained from exercising jurisdiction over ICS' state law claims under either the Burford[1] or Pullman[2] abstention doctrines; and (2) whether the district court should have exercised its discretion to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c).
 
 II
 DISCUSSION
 A.
 
 7
 We turn first to ICS' contention that the district court should have abstained from adjudicating this matter under either the Burford or Pullman abstention doctrines. As an initial matter, we note that the Supreme Court has recently stressed that the federal courts have a strict duty to exercise the jurisdiction conferred upon them by Congress. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). For this reason, the doctrine of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and may be invoked only in those "exceptional circumstances" in which surrendering jurisdiction "would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). We review a district court's decision whether to abstain from exercising jurisdiction for an abuse of discretion. See A.G. Edwards & Sons, Inc. v. Public Bldg. Comm'n, 921 F.2d 118, 121 (7th Cir.1990).
 
 1. Waiver
 
 8
 In the City's view, we need not reach the merits of ICS' abstention arguments because ICS has waived those arguments. ICS urged the district court to abstain only when seeking remand of the first of its two state court complaints. The district court declined to reach the merits of ICS' abstention arguments at that nascent stage. ICS did not renew those arguments in the district court; nor did it invoke abstention principles before this court in its earlier appeal. Instead, it next raised its abstention arguments before the Supreme Court. As we noted earlier, the Court directed us to consider those arguments on remand.[3]
 
 
 9
 It is well established that this court may raise the doctrines of Burford and Pullman abstention sua sponte and that the failure of the parties to raise those doctrines at any point in the proceedings is no impediment to our consideration of the applicability of those doctrines.[4] See Bellotti v. Baird, 428 U.S. 132, 143-44 n. 10, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); Barichello v. McDonald, 98 F.3d 948, 955 (7th Cir.1996); In re McCarthy Bros. Co., 83 F.3d 821, 830 (7th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 361, 136 L.Ed.2d 253 (1996); General Ry. Signal Co. v. Corcoran, 921 F.2d 700, 709 (7th Cir.1991); Waldron v. McAtee, 723 F.2d 1348, 1351 (7th Cir.1983). Under Pullman abstention, a court abstains in order to avoid unnecessary constitutional adjudication. See infra Part II.A.3. Accordingly, when a court abstains under that doctrine, "it is not seeking to protect the rights of one of the parties; it is seeking to promote a harmonious federal system by avoiding a collision between the federal courts and state (including local) legislatures." Waldron, 723 F.2d at 1351. Like the Pullman doctrine, the Burford doctrine is not concerned with the rights of the parties in the case at hand but rather is inspired by concerns of federalism. Under that doctrine, the federal courts will abstain from deciding unsettled questions of state law that relate to a complex state regulatory scheme. See infra Part II.A.2. Therefore, in light of the important institutional concerns that imbue the Pullman and Burford doctrines, we may consider the appropriateness of abstention under either doctrine sua sponte and the failure of a party to raise these issues in the district court will not necessarily operate as waiver. We now turn to the merits of ICS' abstention arguments.
 
 2. Burford Abstention
 
 10
 ICS first contends that the district court abused its discretion by failing to abstain under the Burford abstention doctrine. That doctrine has its genesis in the Supreme Court's holding in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In Burford, the Sun Oil Company filed a lawsuit in federal court attacking the validity of an order of the Texas Railroad Commission granting Burford a permit to drill four oil wells in an East Texas oil field. Sun Oil sought to enjoin the commission's order as a denial of due process and as a violation of state law. In order to manage effectively the expanding oil industry, unquestionably that state's most important industry, the Texas legislature had established a complex administrative scheme for addressing issues concerning local oil well drilling. The Railroad Commission had the primary responsibility for administering that scheme. In addition, all direct review of the commission's orders were consolidated in one state district court. The concentration of judicial review in that single court was designed both to permit that court, like the underlying administrative body, to acquire a specialized knowledge of the state's administrative scheme governing the oil industry[5] and to ensure uniformity in the administration of that scheme.
 
 
 11
 The Supreme Court held that the district court should have dismissed the case. In reaching its decision, the Court stressed the existence of a complex state administrative scheme and the need for centralized decisionmaking in the allocation of oil drilling rights. The Court noted that judicial review in the designated state court was "expeditious and adequate," id. at 334, 63 S.Ct. 1098, whereas review in the relatively unsophisticated federal courts would lead to "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy," id. at 327, 63 S.Ct. 1098. Indeed, review by the federal courts would give rise to the very evils that the Texas scheme sought to avoid by confining review to a designated court. See id. at 327, 333-34, 63 S.Ct. 1098.
 
 
 12
 In subsequent cases, the Supreme Court has stated that Burford abstention is appropriate in two situations. First, federal courts should abstain from deciding " ' "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." ' " Quackenbush, 517 U.S. at 726-27, 116 S.Ct. 1712 (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976))). We should also abstain from the exercise of federal review that " ' "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." ' " Id.[6] ICS contends that both types of Burford abstention apply to this case.
 
 
 13
 We turn to ICS' contention that abstention is appropriate in this case under the first type of Burford abstention. There is no question that the Landmarks Ordinance reflects important local public policy concerns regarding the development and preservation of historically and architecturally significant real estate. Indeed, the courts have recognized that land use regulations implicate issues that are primarily of local concern. See Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (stating that eminent domain concerns "turn on legislation with much local variation interpreted in local settings"); see also Pomponio v. Fauquier County Bd. of Supervisors, 21 F.3d 1319, 1326 (4th Cir.) (en banc) (stating that challenges to state or local zoning or land use laws, "when stripped of the cloak of their federal constitutional claims ... are really state law claims because it is either the zoning or land use decisions, decisional processes, or laws that are the bases for the plaintiffs' federal claims."), cert. denied, 513 U.S. 870, 115 S.Ct. 192, 130 L.Ed.2d 125 (1994). However, Burford abstention is rarely, if ever, appropriate when "the state law to be applied appears to be settled." Colorado River, 424 U.S. at 815, 96 S.Ct. 1236. In fact, even in cases involving state land use issues, a district court must not decline jurisdiction where its exercise "would ... not require the District Court to guess at the resolution of uncertain and difficult issues of state law." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 187, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); cf. Thibodaux, 360 U.S. at 29, 79 S.Ct. 1070 (district court's decision to abstain was appropriate where the exercise of jurisdiction would have required the court to "make a dubious and tentative forecast" of state law).
 
 
 14
 ICS' sole remaining state claim is its contention that the City's Landmarks Ordinance violates the Takings Clause of the Illinois Constitution.[7] In ICS' view, the district court should have abstained from deciding this issue because the application of the Illinois Takings Clause to this case presents difficult and unsettled issues of state law. Although it is true that the Illinois Takings Clause provides protection greater than that provided by its federal counterpart, the application of that clause to this case is clear. The greater protection provided by the Illinois Takings Clause stems from the fact that the clause not only guards against a governmental taking of private property but also guards against governmental "damage" to private property. See Ill. Const. art. I, § 15 ("Private property shall not be taken or damaged for public use without just compensation as provided by law."). The Illinois courts have long required a plaintiff seeking compensation for a governmental damaging of his property rights to demonstrate "an actual physical invasion by the government onto [his] property." Forest Preserve Dist. v. West Suburban Bank, 161 Ill.2d 448, 204 Ill.Dec. 269, 641 N.E.2d 493, 497 (1994); Equity Assocs., Inc. v. Village of Northbrook, 171 Ill.App.3d 115, 121 Ill.Dec. 71, 524 N.E.2d 1119, 1124 holding that plaintiff asserting that governmental action amounted to a "damaging" of his property rights must show a " 'direct physical disturbance' " (quoting Rigney v. City of Chicago, 102 Ill. 64, 81 (Ill.1881)), appeal denied, 122 Ill.2d 573, 125 Ill.Dec. 215, 530 N.E.2d 243 (1988). If the plaintiff cannot make this showing, then his claim is analyzed under the same standard employed under the federal constitution--whether the governmental regulation at issue "radically curtails a property owner's rights such that 'all economically beneficial or productive use of [the] land' is denied." Forest Preserve Dist., 204 Ill.Dec. 269, 641 N.E.2d at 497 (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)). Contrary to ICS' arguments, the above description illustrates that the law governing its sole remaining state law claim is well settled and clear.[8] Accordingly, the first of the Burford abstention rationales does not apply to this case.
 
 
 15
 We turn next to ICS' claim that abstention is appropriate in this case under the second type of Burford abstention. As we noted above, the second type of Burford abstention is appropriate only in those cases in which the exercise of federal review would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. See Quackenbush, 517 U.S. at 727, 116 S.Ct. 1712. Again, there can be no doubt that the Landmarks Ordinance represents an effort by the City of Chicago to establish a coherent policy regarding a matter of substantial public concern-the preservation of historically and architecturally significant real estate. However, this alone is not enough to warrant abstention. In Property & Casualty Insurance Limited v. Central National Insurance Company of Omaha, 936 F.2d 319, 323 (7th Cir.1991), we held that a court must find two essential elements in order to justify abstention under the second prong of the Burford doctrine:
 
 
 16
 First, and most obvious, the state must offer some forum in which claims may be litigated.... Second, that forum must be special--it must stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims. The ability to point to a specialized proceeding is a prerequisite of, not a factor in, the second type of Burford abstention.
 
 
 17
 Id.; compare Hartford Cas. Ins. Co. v. Borg-Warner Corp., 913 F.2d 419, 425-27 (7th Cir.1990) (Burford abstention appropriate where federal litigation between insolvent insurer and its creditors would interfere with proceedings in state rehabilitation court) with Board of Educ. v. Bosworth, 713 F.2d 1316, 1320 (7th Cir.1983) (Burford abstention not appropriate in case in which the adjudication of the issues raised by the state policy is not entrusted to a specialized tribunal).[9]
 
 
 18
 It is clear that this case contains the first element identified in Property & Casualty Insurance--the City does offer a forum in which claims may be litigated, the Circuit Court of Cook County. See Municipal Code of Chicago § 2-120860. The question, then, is whether that forum is "special." As we noted above, a "special forum" is one that "stand[s] in a special relationship of technical oversight or concentrated review to the evaluation of ... claims" arising under the state administrative scheme at issue. Property & Cas. Ins. Ltd., 936 F.2d at 323. We believe that the role played by the Circuit Court of Cook County under the City's Landmarks Ordinance is not sufficient to render it a "special forum" under the above definition for two reasons.
 
 
 19
 First, unlike the situation in Burford in which the Texas legislature deliberately chose to concentrate judicial review of the Railroad Commission's orders in one district court,[10] the City Council did not deliberately choose to concentrate judicial review in the Circuit Court of Cook County as part of an effort to endow that court with the specialized knowledge necessary to deal with cases arising under the City's Landmarks Ordinance. Rather, that provision of the Landmarks Ordinance is mandated by state law. Indeed, the decisions of any local landmarks commission are reviewed under the Illinois Administrative Review Act, see 65 ILCS 5 11-48.2-4, and, under that Act, any court of general jurisdiction in the county in which the agency sits may review final administrative decisions, see ILCS 5 3-104.
 
 
 20
 Second, the standard of review employed by the Circuit Court of Cook County in evaluating the actions of the Landmarks Commission clearly distinguishes its role in the City's administrative scheme from the role played by the Texas courts in Burford. As we noted earlier, in the administrative scheme considered by the Court in Burford, the Texas courts were "working partners" with the administrative agency. See 319 U.S. at 326, 63 S.Ct. 1098. Those courts reviewed the agency's actions for reasonableness by trial de novo and had the power to formulate new standards for the Commission's administrative practice. See id. By contrast, in this case, the Circuit Court of Cook County reviews the actions of the City's Landmarks Commission under the deferential standards of the Illinois Administrative Review Act, standards similar to those used by the federal courts when reviewing agency action under the Administrative Procedure Act. Under the Illinois Act, courts must defer to the agency's construction of an ambiguous statute, see Abrahamson v. Illinois Dep't of Prof'l Regulation, 153 Ill.2d 76, 180 Ill.Dec. 34, 606 N.E.2d 1111, 1121-22 (1992), and may not reverse the agency's factual findings unless they are manifestly against the weight of the record evidence, see id. 606 N.E.2d at 1117 ("An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident."). Therefore, unlike the situation in Burford, the administrative scheme at issue in this case does not recognize any specialized expertise in the Circuit Court of Cook County; instead, it is the Landmarks Commission whose expertise on the law and the facts deserves deference. Accordingly, because ICS is unable to point to the type of specialized forum found in Burford, the second of the Burford abstention rationales does not apply to this case.
 
 3. Pullman Abstention
 
 21
 ICS also asserts that the district court should have abstained from adjudicating this case under the Pullman abstention doctrine. As its name suggests, the Pullman doctrine originated in the Supreme Court's decision in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In Pullman, the Texas Railroad Commission issued a regulation preventing the operation of sleeping cars unless there was a conductor, and not only a porter, present. During that era, conductors were white and porters were black. The commission's regulation was challenged by the Pullman Company and others as violative of the Equal Protection, Due Process and Commerce Clauses of the Constitution. In addition, the parties brought a pendent state law claim asserting that the commission lacked the legal authority under Texas law to issue the regulation. The Supreme Court unanimously held that abstention was appropriate on the federal constitutional claims pending a state court determination whether the commission possessed the authority to issue the regulation. See id. at 501-02, 61 S.Ct. 643. Accordingly, if the state court ruled in favor of the plaintiffs and held that the commission did not have the power under state law to issue the regulation, the matter would be resolved, and the Court would avoid the unnecessary determination of a federal constitutional question. In reaching this determination, the Court observed that abstention would "avoid the waste of a tentative decision" with respect to an uncertain issue of state law, "as well as the friction of a premature constitutional adjudication." Id. at 500, 61 S.Ct. 643.
 
 
 22
 The Supreme Court has recently stated that Pullman abstention operates only where "the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law." See Quackenbush, 517 U.S. at 716-17, 116 S.Ct. 1712. Indeed, as this doctrine has developed, it is clear that Pullman abstention is warranted only when (1) there is a substantial uncertainty as to the meaning of the state law and (2) there exists a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling. See Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 306, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979).[11]
 
 
 23
 In this case, neither of the circumstances necessary for Pullman abstention is present. First, as we noted earlier, the law governing ICS' sole remaining state law claim[12] is not uncertain. See supra II.A.2. Indeed, the test under Illinois law for determining when a governmental action that involves no physical invasion of property amounts to a taking is the same as that employed under the federal constitution. See Forest Preserve Dist., 204 Ill.Dec. 269, 641 N.E.2d at 497. Second, as this case comes to us, the primary rationale for Pullman abstention-the prospect of obviating the need for a federal constitutional ruling--is not present because ICS is no longer pressing a federal constitutional claim. Accordingly, at this juncture, Pullman abstention is not appropriate.
 
 B.
 
 24
 We turn now to ICS' claim that the district court should have declined supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). In its decision in this case, the Supreme Court held that the district court had original jurisdiction over ICS' claims arising under federal law and thus also had supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the accompanying state law claims arising out of the same case or controversy. See City of Chicago v. International College of Surgeons, 522 U.S. 156, ----, ----, 118 S.Ct. 523, 530, 533, 139 L.Ed.2d 525 (1997). ICS now contends that the district court should nevertheless have exercised its discretion to decline jurisdiction over ICS' state law claims pursuant to a companion provision, 28 U.S.C. § 1367(c), which provides:
 
 
 25
 (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
 
 
 26
 (1) the claim raises novel or complex issues of State law,
 
 
 27
 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
 
 
 28
 (3) the district court has dismissed all claims over which it has original jurisdiction, or
 
 
 29
 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
 
 
 30
 We review a district court's decision under § 1367(c) for an abuse of discretion. See Timm v. Mead Corp., 32 F.3d 273, 276-77 (7th Cir.1994).
 
 
 31
 We need not address the merits of ICS' contention, however, because ICS has waived this argument by failing to raise it in the district court. See Myers v. County of Lake, 30 F.3d 847, 850 (7th Cir.1994) (holding that court must examine on its own the propriety of exercising supplemental jurisdiction under § 1367(a), but that court should review district court's exercise of discretion under § 1367(c) only upon an "assertion of error by the litigants"), cert. denied, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994); see also Lucero v. Trosch, 121 F.3d 591, 598 (11th Cir.1997) (declining to address defendants' argument that the district court erred in failing to exercise its discretion to dismiss state claims pursuant to § 1367(c) because that argument was raised for the first time on appeal); Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir.1997) (en banc) (holding that "review of the discretionary aspect to supplemental jurisdiction ... is waived unless raised in the district court"); Doe v. District of Columbia, 93 F.3d 861, 871 (D.C.Cir.1996) (same). At oral argument, counsel for ICS conceded that it did not contest this issue in the district court and further reported that ICS had decided not to contest supplemental jurisdiction in the district court because it thought the district court would resolve the state law claims in its favor. Now that the district court has resolved those claims against it, ICS must live with the consequences of its strategic decision.
 
 
 32
 By relying on waiver, we do not want to suggest to the district courts that the law of this court has become any less vigilant in protecting the federalism concerns embodied in § 1367(c). In Van Harken v. City of Chicago, 103 F.3d 1346 (7th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 1846, 137 L.Ed.2d 1049 (1997), we held that, once a district court has dismissed all the claims over which it had original jurisdiction, a significant facial attack to a state statute on state constitutional grounds should normally be remanded to state court. See id. at 1354-55. Our holding in Van Harken remains the law of this circuit.[13]
 
 C.
 
 33
 Because we have determined that the district court did not abuse it discretion in refusing to abstain in this matter and that ICS has waived its contention that the district court should have declined supplemental jurisdiction pursuant to § 1367, we turn now to the merits of ICS' state law claim. The only remaining state law claim pressed by ICS is its contention that the City's Landmarks Ordinance ("the ordinance") violates the Takings Clause of the Illinois Constitution. ICS mounts both a facial and an as-applied challenge to the ordinance. This court reviews de novo the district court's decision to grant summary judgment on that issue. See Kolman v. Sheahan, 31 F.3d 429, 431 (7th Cir.1994).
 
 
 34
 We turn first to ICS' facial challenge. Under the ordinance, an owner such as ICS, who has been denied a demolition permit, may seek an economic hardship exception. In order to qualify for that exception, the owner must prove that the denial of the permit will result in the loss of "all reasonable and beneficial use of or return from the property." See Municipal Code of Chicago § 2120-830. ICS concedes that this exception provides the same level of protection to landowners as the Takings Clause of Fifth Amendment of the United States Constitution provides. See Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 128-38, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (holding that a land use regulation is compensable as a taking under the Fifth Amendment only when the regulation denies all economically beneficial uses of the affected site). However, ICS contends that the ordinance is invalid under the Takings Clause of the Illinois Constitution because it fails to afford landowners the greater protection provided by that provision. See, e.g., Equity Assocs., Inc. v. Village of Northbrook, 171 Ill.App.3d 115, 121 Ill.Dec. 71, 524 N.E.2d 1119, 1126 (noting that the guarantee of the Illinois Constitution that "private property shall not be taken or damaged for public use without just compensation" is greater than the parallel guarantee provided under the Fifth and Fourteenth Amendments of the federal constitution), appeal denied, 122 Ill.2d 573, 125 Ill.Dec. 215, 530 N.E.2d 243 (1988).
 
 
 35
 We agree with ICS that, as a general matter, the Takings Clause of the Illinois Constitution provides greater protection than its federal counterpart. That provision reads as follows: "Private property shall not be taken or damaged for public use without just compensation as provided by law. Such compensation shall be determined by a jury as provided by law." Ill. Const. art. I, § 15. We also agree with ICS that the greater protection afforded by the state provision is its safeguard not only against a governmental taking of private property but also against governmental "damage" to private property. Thus, in order to succeed in its claim that the economic hardship exception of the Landmarks Ordinance does not provide protection to landowners commensurate with that provided by the Illinois Constitution, ICS must show that application of the ordinance to a specific property could cause "damage" to that property, within the meaning of § 15 of the state constitution. ICS cannot make this showing. The term "damage" in the Takings Clause of the Illinois Constitution has long been understood by the Illinois courts to mean a " 'direct physical disturbance' " of the plaintiff's property rights. See Equity Assocs., 121 Ill.Dec. 71, 524 N.E.2d at 1124 (quoting Rigney v. City of Chicago, 102 Ill. 64, 81 (Ill.1881)). ICS presents no situation in which the application of the ordinance to a specific property would effectuate a direct physical disturbance of that property sufficient to constitute "damage" under the Takings Clause of the Illinois Constitution. Although it is true that the application of the ordinance to a particular piece of property may prevent the property owner from developing the property in the manner he desires, the prevention of the physical development of property does not constitute "damage" under the Takings Clause of the Illinois Constitution. See id. 524 N.E.2d at 1124 ("It is a physical disturbance to property, not the prevention of its physical development, which constitutes damage requiring just compensation.").
 
 
 36
 Because the City's Landmarks Ordinance does not implicate the "damage" provision of § 15, ICS must rely on the "takings" language in that section if it is to succeed in its challenge to the constitutionality of the ordinance. However, as noted earlier, in Forest Preserve District v. West Suburban Bank, 161 Ill.2d 448, 204 Ill.Dec. 269, 641 N.E.2d 493, 497 (1994), the Illinois Supreme Court held that the test to determine whether a particular governmental regulation amounts to a taking under the Illinois Constitution is the same as that employed under the federal constitution: A taking of private property "occurs where governmental regulation radically curtails a property owner's rights such that 'all economically beneficial or productive use of [the] land' is denied." Id. (quoting Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)). As we noted earlier, the economic hardship exception of the Landmarks Ordinance is commensurate with this standard and therefore provides protection equal to that provided by § 15 of the state constitution. Accordingly, ICS' facial challenge to the constitutionality of the Landmarks Ordinance must fail.
 
 
 37
 ICS' as-applied challenge to the ordinance fails for the same reasons. First, for the reasons stated above, the restrictions placed on ICS' right to develop its property by the ordinance do not implicate the "damage" provision of the Takings Clause of the Illinois Constitution. Indeed, it is undisputed that the application of the ordinance to ICS' property did not effectuate a direct physical disturbance of that property. Second, ICS cannot avail itself of the "takings" provision of § 15 because the application of the ordinance to its property did not deprive it of all economically beneficial or productive use of its property. The record in this case clearly demonstrates that, even with the landmark designation and the denial of the demolition permits, ICS may continue using the property for its offices and a museum.
 
 Conclusion
 
 38
 For the reasons stated in the foregoing opinion, we affirm the judgment of the district court.
 
 
 39
 AFFIRMED.
 
 
 
 [1]
 See Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)
 
 
 [2]
 See Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)
 
 
 [3]
 We cannot accept ICS' argument that we are required to reach the merits of its abstention arguments because the Supreme Court directed us to consider those arguments on remand. The Court was merely following the well-established principle of remanding issues not reached by the lower courts. See International Bhd. of Elec. Workers v. Hechler, 481 U.S. 851, 865, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); J. Truett Payne Co. v. Chrysler Motors Corp., 451 U.S. 557, 568, 101 S.Ct. 1923, 68 L.Ed.2d 442 (1981); United States v. United Continental Tuna Corp., 425 U.S. 164, 182, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976). Accordingly, its direction that we consider ICS' abstention arguments on remand does not amount to an implicit holding that ICS has not waived those arguments
 
 
 [4]
 A state may waive an abstention argument based on Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), ("Younger abstention"), by expressly urging the district court to address the merits of the case. See Ohio Civil Rights Comm'n v. Dayton Christian Sch., 477 U.S. 619, 626, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); Time Warner Cable v. Doyle, 66 F.3d 867, 874 n. 6 (7th Cir.1995), cert. denied, 516 U.S. 1141, 116 S.Ct. 974, 133 L.Ed.2d 894 (1996); cf. Nelson v. Murphy, 44 F.3d 497, 501 (7th Cir.) ("The principle of Younger is that a party to a state proceeding affecting important governmental interests must resolve the dispute in the state's preferred tribunal."), cert. denied, 516 U.S. 1027, 116 S.Ct. 671, 133 L.Ed.2d 521 (1995)
 
 
 [5]
 We note that the role played by the Texas courts under the Texas administrative scheme was much different from the role the federal courts play in reviewing agency action under the Administrative Procedure Act. The Supreme Court described the responsibility of the Texas courts as follows:
 [S]uffice it to say that the Texas courts are working partners with the Railroad Commission in the business of creating a regulatory system for the oil industry. The Commission is charged with principal responsibility for fact finding and for policy making and the courts expressly disclaim the administrative responsibility, but on the other hand, the orders of the Commission are tested for "reasonableness" by trial de novo before the court, and the Court may on occasion make a careful analysis of all the facts of the case in reversing a Commission order. The court has fully as much power as the Commission to determine particular cases, since after trial de novo it can either restrain the leaseholder from proceeding to drill, or, if the case is appropriate, can restrain the Commission from interfering with the leaseholder. The court may even formulate new standards for the Commission's administrative practice and suggest that the Commission adopt them.
 Burford, 319 U.S. at 326, 63 S.Ct. 1098.
 
 
 [6]
 See also Erwin Chemerinsky, Federal Jurisdiction § 12.2.3 (2d ed.1994) (noting that the court in Burford justified abstention based on the "presence of both unclear questions of state law and of a need for centralized administration")
 
 
 [7]
 In this case, we are faced with an anomalous situation. On the one hand, as part of its argument that this court should abstain under the Burford and Pullman doctrines, ICS asks that we consider the complexity and uncertainty of the state law governing its claim that the Landmarks Ordinance violates the state constitution by delegating legislative power to the Landmarks Commission. On the other hand, ICS no longer presents that claim to us for a determination on the merits. In fact, at oral argument, ICS' counsel acknowledged that ICS was "forced" to choose between the two state constitutional claims it presented in its initial appeal (nondelegation and takings) due to this court's restrictions on the size of appellate briefs. That, of course, is no excuse, see, e.g., Kauthar SDN BHD v. Sternberg, 149 F.3d 659, 672-73 (7th Cir.1998). Indeed, there are strong arguments that ICS' decision to drop its nondelegation claim should operate as waiver not only with respect to the merits of that claim but also to the extent that the presence of that claim in the litigation impacts its abstention arguments. However, out of an abundance of caution, we shall assume arguendo that ICS has not abandoned that claim to the extent that it plays a role in ICS' abstention arguments
 We therefore shall now consider the impact, if any, of ICS' nondelegation claim on our analysis of whether abstention is appropriate in this case under the Burford doctrine. As we noted above, a district court should not abstain under the first type of Burford abstention where the state law to be applied appears to be settled. Similar to the law governing its claim under the Illinois Takings Clause, the law governing ICS' nondelegation claim is well established. Under Illinois law, a valid delegation of legislative authority to an administrative agency requires that the legislative body provide "sufficient identification" of: (1) the person and activities potentially subject to regulation; (2) the harm sought to be prevented; and (3) the general means intended to be available to the administrator to prevent the identified harm. See Stofer v. Motor Vehicle Cas. Co., 68 Ill.2d 361, 12 Ill.Dec. 168, 369 N.E.2d 875, 879 (1977); see also In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989, 167 Ill.2d 161, 212 Ill.Dec. 215, 656 N.E.2d 1049, 1058 (1995) (applying standard enunciated in Stofer); People v. Gurell, 98 Ill.2d 194, 74 Ill.Dec. 516, 456 N.E.2d 18, 25 (1983) (same). Accordingly, in evaluating ICS' nondelegation claim, the district court was simply required to apply this well-established standard to the facts of the case. Abstention under the first prong of the Burford doctrine is generally not appropriate in such circumstances. Finally, with respect to the second type of Burford abstention, our analysis is unchanged by consideration of ICS' nondelegation claim: Abstention is inappropriate because the state has not provided for review of the Landmarks Commission's decisions in a "special forum."
 
 
 [8]
 For a more detailed discussion of the Illinois Takings Clause, see infra Part II.C
 
 
 [9]
 See also Tucker v. First Md. Sav. & Loan, Inc., 942 F.2d 1401, 1405 (9th Cir.1991) (holding that Burford abstention is appropriate only in cases where the state has concentrated suits involving the local issue in a particular court); Nasser v. City of Homewood, 671 F.2d 432, 440 (11th Cir.1982) (finding no state interest in uniformity which would be disrupted by federal review of zoning ordinances because state had not concentrated decisionmaking on zoning matters in particular or centralized forum); Moe v. Brookings County, 659 F.2d 880, 883 (8th Cir.1981) (distinguishing case from Burford because state had not provided for review in specialized state courts). But see Bethphage Lutheran Serv., Inc. v. Weicker, 965 F.2d 1239, 1245 (2d Cir.1992) ("Though the absence of consolidation of state court judicial review lessens the case for abstention, this factor has never been thought to be indispensable to Burford abstention."); Browning-Ferris, Inc. v. Baltimore County, 774 F.2d 77, 80 (4th Cir.1985) ("We ... find that a final appeal to a central administrative court with special expertise and jurisdiction to decide only certain kinds of cases is not an absolute prerequisite of the application of Burford abstention.")
 
 
 [10]
 Cf. Alabama Pub. Serv. Comm'n v. Southern Ry. Co., 341 U.S. 341, 348, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) (holding that Burford abstention was appropriate in case in which review of the rulings of Alabama Public Service Commission were consolidated in one circuit court)
 
 
 [11]
 See generally Chemerinsky, supra note 6, at § 12.2.1; 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4242 (2d ed.1988)
 
 
 [12]
 Assuming arguendo that we must consider ICS' nondelegation claim in assessing the appropriateness of Pullman abstention in this case, see supra note 7, our analysis would not be different because the legal standard governing that claim is also well established, see id
 
 
 [13]
 The standard governing whether a district court should retain jurisdiction over an as-applied challenge under a state constitution is necessarily more flexible. See, e.g., Centres, Inc. v. Town of Brookfield, 148 F.3d 699, 705 & n. 11 (7th Cir.1998)