In the Matter of the REHABILITA-
TION OF SEGREGATED ACCOUNT
OF AMBAC ASSURANCE CORPO-
RATION.

Theodore K. Nickel, Commissioner
of Insurance of the State of
Wisconsin,[1] Petitioner,

v.

United States of America, Respondent.

No. 10–cv–778–bbc.

United States District Court,
W.D. Wisconsin.

Jan. 14, 2011.

---

1. Theodore K. Nickel replaced Sean Dilweg as Commissioner of Insurance for the State of Wisconsin on January 3, 2011.

Matthew R. Lynch, Michael B. Van Sicklen, Foley & Lardner LLP, Madison, WI, for Petitioner.

Hilarie Snyder, Robert J. Kovacev, United States Department of Justice, Tax Division, Washington, DC, Richard D. Humphrey, U.S. Attorney's Office, Madison, WI, for Respondent.

Daniel Warren Stolper, Stafford Rosenbaum, LLP, Madison, WI, Emily L. Saffitz, Henry J. Ricardo, Peter A. Ivanick, Richard W. Reinthaler, Dewey & Leboeuf, LLP, New York, NY, for Ambac Assurance Corporation.

## OPINION and ORDER

BARBARA B. CRABB, District Judge.

This proceeding was removed to this court from the Circuit Court for Dane County, Wisconsin, by the United States. It is before the court on two motions: the Commissioner of Insurance's motion for remand and the United States' motion to dissolve the order entered in the state court enjoining the United States from taking certain actions related to the potential tax liability of Ambac Assurance Corporation. A hearing was held on both motions on January 12, 2011.

This order addresses only the first motion, in which I conclude that the case was removed improperly from the state court. In particular, I conclude that the United States' removal of the state court injunction matter is preempted under the McCarran–Ferguson Act, which leaves to the states the business of insurance. Also, I am persuaded that the principles of comity and federalism set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), require abstention in this case. I will not discuss the United State's motion to dissolve the state court injunction because removal was improper and jurisdiction does not exist to entertain it.

From the record and from the facts adduced at the hearing, I find the follow-

ing facts solely for the purpose of deciding the pending motions.

## FACTS

Ambac is a Wisconsin insurance corporation with headquarters in New York. For most of the past 30 years, it has been one of the two largest insurers of financial guarantees. It is a "monoline" insurer, providing financial guaranty insurance on financial products such as residential mortgage-backed securities, credit default swaps, commercial asset-backed securities and other substantial financial transactions.

Ambac is a wholly-owned subsidiary of Ambac Financial Group Inc., a holding company headquartered in New York City. Throughout the relevant time period, Ambac Financial filed consolidated federal income tax returns for itself and its subsidiaries, including Ambac.

Ambac's financial condition began to deteriorate in late 2007, when many of the transactions it had insured proved to be worth less than they had been held out to be. As the company saw the increase of actual and estimated future losses growing over the following two years and the resulting damage to its credit rating, it stopped writing new policies and began a functional run-off of its policies in force.

Concurrently, the Wisconsin Office of the Commissioner of Insurance began increasing its oversight of Ambac and retained advisers with experience in the specialized complex financial transactions of companies. By early 2010, the office had decided that formal regulatory action was necessary. Accordingly, it implemented the provisions of Wis. Stat. ch. 645, which applies to the rehabilitation and liquidation of insurance companies operating in Wisconsin.

In light of the complexity of the insured transactions and his concern for minimizing the risks to policyholders, the Commissioner of Insurance decided not to undertake a full rehabilitation of the company, which he feared would cause unnecessary and avoidable losses to policyholders and possibly to the economy. If, for example, a transaction that was not at risk was included in the rehabilitation process, the lenders behind the risk-free notes might have the right to withhold financing for the payment of the notes, thereby giving the counter-parties on the notes the right to accelerate and declare default. In those instances, the issuers might not be able to make the accelerated damages payments and would turn to Ambac to cover the payments.

To avoid unnecessary risk, the Commissioner took advantage of Wis. Stat. § 611.24(2), which permits an insurer to establish a segregated account for any part of its business, with the Commissioner's approval. To carry out the segregation, the Commissioner reviewed Ambac's business to evaluate its exposure under its policies. His staff determined that about 1,000 out of Ambac's 15,000 policies had material projected losses, structural problems with the underlying transactions and contractual triggers that could not be avoided except by court action. He assigned these to a "segregated account," while keeping the remainder in Ambac's general account, where they would not be subject to acceleration, early termination or other triggers. All policies with material anticipated losses and all other known, potentially material non-policy liabilities of Ambac's general account are allocated to the segregated account, including the general account's obligations under certain reinsurance contracts and disputed contingent liabilities related to two office leases. The segregated account has no claim-paying assets of its own, but is capitalized by a two-billion dollar secured note issued by Ambac to the account and an aggregate excess of loss reinsurance agreement pro-

vided by Ambac. Plan of Operation, dkt. # 13–3, at 3. Under the terms of the secured note, dkt. # 31–1, and reinsurance agreement, dkt. # 23–3, the segregated account may call upon the general account to pay claims allocated to the segregated account, as long as payment of the segregated account claims would not cause Ambac's assets to fall below $100 million, which is less than 2 % of Ambac's claim-paying assets. In other words, the segregated account has access to 98 % of Ambac's current assets with which to pay claims. In addition, Ambac may not enter into any transaction involving more than $5 million without the segregated account's prior written consent, with the exception of certain investments and policy claims made in the ordinary course of business. On March 24, 2010, the Commissioner asked the Circuit Court for Dane County, Wisconsin, to rehabilitate the segregated account. For the purpose of the rehabilitation, the segregated account is considered a separate insurer from Ambac. On the same day, as part of the rehabilitation, the Commissioner moved ex parte under Wis. Stat. § 645.05 to obtain "first-day injunctive relief" that barred all persons and entities from commencing or prosecuting any actions against the general account "in respect of the segregated account or policies, contracts, or liabilities allocated to the segregated account." First–Day Injunction, Dkt. # 14, Exh. D, ¶ 1. Once the injunction was in place, petitioner provided court-approved notice of the rehabilitation and the First–Day Injunction by mail, publication and a posting on a court-approved website, http://ambacpolicyholders.com. Respondent United States had no advance knowledge of the rehabilitation proceeding or its scope.

The United States' interest in the proceeding grows out of a "tentative" federal tax refund it paid to Ambac Financial from 2008 through 2010, in the amount of approximately $700 million. Ambac Finan-cial allocated the $700 million refund to Ambac. The refund was paid under 26 U.S.C. § 6411, which requires the Internal Revenue Service to provide such refunds within 90 days of an application by a corporate taxpayer asserting that it has overpaid tax because of a net operating loss carryback. The refund is termed tentative, because the IRS retains the right to conduct a more thorough audit of the taxpayer's application later and recapture any funds it has paid erroneously.

On October 28, 2010, the IRS sent Ambac Financial an information document request seeking information related to the basis for the refunds, asking, among other things, whether Ambac Financial had received advance permission from the IRS before changing its accounting method. Within ten days, Ambac Financial filed for Chapter 11 bankruptcy protection in the Southern District of New York and filed an adversary proceeding in the bankruptcy court to determine its tax liability. (Ambac Financial is not in the business of insurance and therefore not entitled to the protections of the rehabilitation proceeding.) The action is pending. On November 7, 2010, Ambac allocated to its segregated account any liabilities it has or may ever have arising from its federal taxes through December 2009 and specifically any liabilities it may have with respect to the tax refund.

The Commissioner approved the allocation, filed a "notice" with the Dane County court and served the notice on the United States on or about November 8, 2010, the same day that Ambac Financial filed for bankruptcy. On the same day, the Commissioner obtained an injunction from the Dane County court enjoining the United States from initiating any type of lawsuit in regard to Ambac's potential federal tax liabilities in any court, administrative body or other tribunal against the segregated

account or any subsidiary of Ambac whose stock or other form of ownership interest were allocated to the segregated account, to Ambac, to any subsidiary of Ambac or the rehabilitator. The order enjoined the United States from taking any prejudgment or other steps to transfer, foreclose or exercise purported rights in or against any property or assets of the segregated account, Ambac or Ambac subsidiaries in relation to any potential future federal tax liabilities of Ambac. The Commissioner served the United States a copy of the injunction, his motion seeking the injunction and a "Notice of Amendment to Plan of Operation for the Segregated Account."

The United States removed the state court action to this court on December 8, 2010. In its notice of removal, dkt. # 1, it specified that it was not removing "issues and/or claims in this rehabilitation action that are unrelated to the Internal Revenue Service, and the Notice, Motion and Order filed on November 8, 2010."

OPINION

The threshold question is whether the United States can remove all or part of the rehabilitation proceeding to this court. If the removal is improper, this court lacks jurisdiction to hear any of the government's challenges to the order entered in the proceeding.

The Commissioner has raised the question by moving for remand. He contends first that the United States is legally incapable of removing the case because it is not a party to the action and the rehabilitation proceeding is not a "civil action" under the applicable removal statute, 28 U.S.C. § 1442. Second, he argues that the McCarran–Ferguson Act "reverse-preempts" federal jurisdictional statutes such as § 1442 that were not enacted specifically to govern or relate to the business of insurance. In other words, the Act is the mirror image of federal laws that

preempt state action, effecting preemption with respect to federal laws and actions that bear on state laws governing the business of insurance. Finally, the Commissioner relies on *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), to support his argument that federal courts should abstain from interfering with specialized, ongoing state regulatory schemes. Because I find the Commissioner's second and third arguments to be persuasive, I need not address the question whether the United States can satisfy the specific requirements of the federal removal statutes.

A. *The McCarran–Ferguson Act*

■ It is well established that the business of insurance is left to the states. In the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–15, passed in 1945, Congress made it clear that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." The Act provided that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012. In *United States Department of the Treasury v. Fabe,* 508 U.S. 491, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993), the Supreme Court ruled that the "business of insurance" extended to proceedings to liquidate or rehabilitate an insurance company.

The Commissioner argues that even if this proceeding had been removed properly, the court would have to remand it because neither the federal removal statutes nor the federal laws authorizing the levying and collection of federal taxes can override state law as it relates to the reha-

bilitation of an insurance company. The United States disputes this proposition, but not convincingly. It argues that federal tax powers trump state law as it relates to insurance because the power of the Internal Revenue Service to levy and collect taxes derives directly from Art. I, § 8 of the Constitution. In fact, those powers belong to the Congress; the IRS derives its authority from Congress.

■ Contrary to the United States' argument, the McCarran–Ferguson Act does not exempt federal tax laws from its prohibition. It is true that under the Anti-Injunction Act, 26 U.S.C. § 7421(a), no *state* law or *state* court can restrict the assessment or collection of taxes. *Id.* ("no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person"). However, it does not follow that *federal* law in the form of the McCarran–Ferguson Act cannot override this statute and any others insofar as they threaten to impede or impair the state's regulation of the business of insurance.

■ As the Court of Appeals for the Seventh Circuit has recognized, the McCarran–Ferguson Act overturns the ordinary preemptions rules by imposing a rule that state laws enacted for the purpose of regulating the business of insurance do not yield to conflicting federal statutes unless the federal statute specifically provides otherwise. *American Deposit Corp. v. Schacht,* 84 F.3d 834, 837–38 (7th Cir.1996) (citing *United States Department of Treasury v. Fabe,* 508 U.S. 491, 507, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993)). In *American Deposit,* the conflict arose out of the desire of national banks to sell Retirement CDs as permitted under the National Bank Act but not allowed by the Illinois director of insurance. Siding with the director, the court of appeals found that the McCarran–Ferguson Act governed the matter.

The United States cites a number of cases in which federal courts have ruled in its favor on questions involving taxation, but these do little to advance its argument. In *Security Industrial Insurance Co. v. United States,* 702 F.2d 1234 (5th Cir. 1983); *Allied Fidelity Corp. v. Commissioner,* 572 F.2d 1190, 1192 (7th Cir.1978); and *Modern Life & Accident Insurance Co. v. Commissioner,* 420 F.2d 36 (7th Cir.1969), the issue was the proper classification for federal tax purposes of an insurance corporation or its subsidiary or the legitimacy of the way in which it had organized itself. None of these cases implicated the policy behind the McCarran–Ferguson Act because the basis on which the federal government taxes an insurance company did not "impair" or otherwise interfere with state regulations categorizing insurance companies for different purposes. The United States is correct that in these cases the Act does not constrain the federal government's right to assess and collect federal taxes from insurance companies, but its point is irrelevant. The Commissioner is not arguing that the United States cannot collect taxes from insurance companies in general or from Ambac in particular or that it can never pursue return of the refund if it determines it was improper; he argues only that under the McCarran–Ferguson Act, the United States must conform its efforts to the restrictions necessary to the effectiveness of the state's rehabilitation proceedings.

■ Similarly, the McCarran–Ferguson Act can restrict the right of removal to federal court in cases in which a state statute governing insurance sets up a comprehensive framework for state rehabilitation proceedings to be conducted in state court and removal would impair that framework. *E.g., Hudson v. Supreme Enterprises, Inc.,* 2007 WL 2323380, *6–7

(S.D.Ohio Aug. 9, 2007); *In re Amwest Surety Insurance Co.*, 245 F.Supp.2d 1038, 1044–45 (D.Neb.2002); *Covington v. Sun Life of Canada (U.S.) Holdings, Inc.*, 2000 WL 33964592, *9–10 (S.D.Ohio May 17, 2000); *United States Financial Corp. v. Warfield*, 839 F.Supp. 684, 688–90 (D.Ariz. 1993). In this case, Wis. Stat. ch. 645 vests jurisdiction in the state rehabilitation court over matters related to the rehabilitation of an insurer. Wis. Stat. § 645.04. The state court has authority to enjoin any action that may interfere with the proceedings or "lessen the value of the insurer's assets or prejudice the rights of policyholders, creditors or shareholders, or the administration of the proceeding." Wis. Stat. § 645.05. These sections of chapter 645 relate specifically to regulating the business of insurance. Application of the federal removal statutes would impair the operation of chapter 645 by depriving the state rehabilitation court of jurisdiction, disrupting the goal of a comprehensive rehabilitation structure and interfering with the orders issued by the state court for the purpose of protecting assets payable to claimants. In sum, the federal removal statutes would "invalidate[ ], impair[ ], or supersede[ ] the state laws at issue in this case." *Hudson*, 2007 WL 2323380, at *7; *see also Munich American Reinsurance Co. v. Crawford*, 141 F.3d 585, 595 (5th Cir.1998) ("Congress has evinced a strong federal policy in favor of deferring to state regulation of insolvent insurance companies as reflected in the McCarran–Ferguson Act and the express exclusion of insurance companies from the federal Bankruptcy Code. These laws symbolize the public interest in having the States continue to serve their traditional roles as the preeminent regulators of insurance in our federal system and indicates the special status of insurance in the realm of state sovereignty.") (citations omitted).

The United States contends that even if removal may be restricted in some cases, the principles of preemption should not apply here because it is challenging the injunction only as it affects property that is not controlled by the rehabilitation court or rehabilitation statutes. However, the United States takes a narrow view of the rehabilitation proceeding, focusing on the fact that the only *res* technically subject to the rehabilitation court's jurisdiction is the segregated account, which contains all of Ambac's questionable assets. It overlooks the lengths to which the Commissioner has gone to control the material risks to the claims-paying resources of Ambac and to treat them in the same way it would treat those risks in a full rehabilitation.

Technically, the rehabilitation proceeding extends only to the segregated account to which certain of the Ambac's liabilities are allocated. In reality, it extends to the general account and to Ambac's affiliates and subsidiaries to the extent that these entities are lenders or insurers of the segregated account. Although the segregated account is deemed to be a separate insurer for purpose of rehabilitation, it is not actually a separate corporation from Ambac. Indeed, the whole point of the rehabilitation is to rehabilitate Ambac Assurance Corporation. The Commissioner and the presiding judge have made the decision that treating the assets and liabilities as they have is best calculated to lead to a successful rehabilitation. The judge held a five-day hearing on the scope and nature of the proceeding and determined that the relationship between the general account and segregated account is fair and equitable. Thus, the plan to rehabilitate the segregated account depends in large part on the assets of the general account being protected by the first-day and supplemental injunctions. Allowing the United States to proceed against Ambac or any of the affiliates and subsidiaries would

amount to pulling out the linchpin that secures the entire enterprise. *Cf. United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 477–78, 56 S.Ct. 343, 80 L.Ed. 331 (1936) (in dispute over right to funds belonging to Russian insurance companies that were being held in state court in connection with liquidation and distribution, United States was not entitled to maintain suit in federal court for accounting of funds; such suit was not merely to establish debt or right to share in property but rather, sought control of property and could not be litigated without disturbing control of *res* by state court); *Metropolitan Life Insurance Co. v. Board of Directors of Wisconsin Insurance Security Fund,* 572 F.Supp. 460, 471 (W.D.Wis. 1983) (noting the "disastrous conflicts that would arise if this court were to issue rulings that reduced the funding in the account [used to provide coverage for policyholder claimants] and thereby defeated that part of the state's liquidation efforts .....").

Finally, the United States contends that even if the McCarran–Ferguson Act reverse-preempts removal statutes in some situations, the Act has no effect when the party attempting removal is a government agency asserting a federal claim. The United States cites *Granite Reinsurance Co. v. Frohman,* 2009 WL 2601105 (D.Neb. 2009), in which a creditor filed an action against the Federal Crop Insurance Corporation (FCIC) and the liquidated insurance company seeking to collect unpaid premiums on reinsurance policies. The FCIC removed the matter to federal court pursuant to § 1442(a) and the liquidator filed a motion to remand that the federal court denied. However, the court did not hold that federal agencies possess an unrestricted right to remove, as the United States suggests; rather, the court noted specifically that the FCIC was a "federal agency charged with implementing a federal insurance program." *Id.* at *5. Thus,

actions by the FCIC fell into the exception to McCarran–Ferguson for federal statutes relating specifically to insurance. The IRS is not an agency directed specifically to implement an insurance program and thus, *Granite Reinsurance* does not help it.

In sum, I conclude the McCarran–Ferguson Act restricts the United States' right to remove this case to federal court, even though the taxing authority of the Internal Revenue service may be implicated by the state rehabilitation court's supplemental injunction. Even if the United States' right to remove was not preempted, I would remand this case to the state court on the basis of the principles of comity and federalism set forth in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

### B. *Abstention*

In *Burford,* the United States Supreme Court held that federal courts should abstain from interfering with specialized, ongoing state regulatory schemes. Abstention under *Burford* is appropriate in two situations: "First, federal courts should abstain from deciding difficult questions of state law bearing on policy problems of substantial import...." *International College of Surgeons v. City of Chicago,* 153 F.3d 356, 362 (7th Cir.1998) (internal quotations omitted). Second, courts "should also abstain from the exercise of federal review that would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Id.* The Court of Appeals for the Seventh Circuit has applied the second type of *Burford* abstention in cases involving state insurance rehabilitation proceedings, noting that states have assumed primary responsibility for regulating the insurance industry. *E.g., Hartford Casualty Insurance Co. v. Borg–Warner Corp.,* 913 F.2d 419,

425–27 (7th Cir.1990) (finding *Burford* abstention appropriate where Illinois had implemented state-court rehabilitation proceeding that would resolve plaintiff's claims); *see also Mountain Funding, Inc. v. Frontier Insurance Co.*, 329 F.Supp.2d 994, 999 (N.D.Ill.2004) (abstention appropriate where insurance liquidation proceeding was adjudicating all claims against defendant in detailed and uniform manner); *Metropolitan Life Insurance Co.*, 572 F.Supp. 460(in case involving challenge to Wisconsin statutes governing operation of Wisconsin Insurance Security Fund, abstention was required under *Burford* and *Colorado River Water Conservation District v. Untied States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), to avoid conflicts with state's ongoing rehabilitation-liquidation proceeding of insurer). However, abstention is proper under *Burford* only if the state "offer[s] some forum in which claims may be litigated," and that forum "stand[s] in a special relationship of technical oversight or concentrated review to the evaluation of those claims." *Property & Casualty Insurance Ltd. v. Central National Insurance Co. of Omaha*, 936 F.2d 319, 323 (7th Cir.1991).

The United States asserts several reasons why abstention would be inappropriate in this case, including the absence of any unsettled questions of state law, the uniqueness of the circumstances and the unlikelihood of any disruption to Wisconsin's insurance regulatory scheme and the presence of important federal tax issues. In addition, it contends that dissolution of the supplemental injunction would have little affect on the rehabilitation proceedings because the assets covered by the injunction are not covered by the rehabilitation case. None of these arguments are persuasive.

Wisconsin has a great interest in maintaining a uniform insurance rehabilitation process that provides strong protection to policyholders. *Property & Casualty Insurance Ltd.*, 936 F.2d at 323. To accomplish this, the state has assumed primary responsibility for regulating the insurance industry. *In re All–Star Insurance*, 484 F.Supp. 623, 626 (W.D.Wis.1980) ("The regulation and liquidation of state domestic insurance companies is a matter of substantial public concern, ... and Ch. 645, Wis. Stats., is a comprehensive state effort to deal with that area of state concern.... Thus ... the strong state interest in orderly liquidation dictates the exercise by the court of its discretionary abstention.") (citations omitted). The Wisconsin statutes contemplate that rehabilitation proceedings should be conducted almost exclusively in the state rehabilitation court, which has the authority both to enjoin actions that threaten the success of the rehabilitation and to address challenges to the structure of the rehabilitation. The statutes allow the rehabilitator to segregate accounts in order to achieve greater protection for policyholders. Ultimately, claims against the segregated account will be collected in the rehabilitation court and paid according to Wisconsin's priority statutes.

Federal court review of the United States' claims would be disruptive of the state's rehabilitation goals and procedures. The rehabilitation proceeding has been in state court for roughly ten months and includes nearly 1,000 financial guaranty insurance policies insuring approximately $60 billion of financial obligations. Removal of this case to federal court has taken the proceedings out of state court and stalled confirmation of the rehabilitation plan. In addition, it has deprived the state court of the ability to address a direct challenge to the lawfulness of the rehabilitation structure and account allocation and has created the potential for conflicting rulings.

Also, the removal has the potential of interfering with the state's priority statutes and the Commissioner's final rehabilitation plan. Although the United States removed the case for the purpose of seeking dissolution of the supplemental injunction, it has requested that this court retain jurisdiction over any future issues that might arise related to the Internal Revenue Service's attempts to collect taxes owed by Ambac. The United States admits that such issues may include whether the IRS may assert priority over other claimants to assets that would otherwise be used to pay claims on the segregated account. Thus, this case has the potential for disrupting any rehabilitation plan developed by the Commissioner and approved by the state court. Courts have recognized that under such circumstances, policyholders are best served by avoiding competing actions in federal court. *Blackhawk Heating & Plumbing Co. v. Geeslin*, 530 F.2d 154, 159–60 (7th Cir.1976) ("The liquidation . . . is best left to a proceeding which will settle all of its affairs and dispose of all of its property. Federal courts should refrain from deciding issues confronting another court in pending proceedings."); *Metropolitan Life*, 572 F.Supp. at 471. Under such circumstances, abstention is appropriate.

The United States has not argued that its claims cannot be heard in the rehabilitation proceeding. The state rehabilitation court has allowed entities with an interest in the rehabilitation an ongoing right to be heard and apply for relief. In fact, the state court has heard challenges to the lawfulness of the account allocation and structure and the first-day injunction. As other claimants have done, the United States may present its challenges to the state court, argue its position on the merits and if the result is unsatisfactory, appeal to the Wisconsin Court of Appeals. *Cf. Bank of New York & Trust*, 296 U.S. at 481, 56 S.Ct. 343 ("We cannot see that there would be impairment of any rights the United States may possess, or any sacrifice of its proper dignity as a sovereign, if it prosecuted its claim in the appropriate forum where the funds are held."); *United States v. $79,123.49 in United States Cash and Currency*, 830 F.2d at 99("[T]he United States 'is in no position to claim that its interests . . . could not be preserved by a Wisconsin court.' ").

In many respects, the state rehabilitation proceedings and the supplemental injunction are similar to federal bankruptcy proceedings and the automatic stay that goes into effect in bankruptcy. Insurance companies are barred from using bankruptcy to reorganize; their only remedy is a state court rehabilitation proceeding. As in bankruptcy, the efficacy of a rehabilitation proceeding is dependent upon the court's ability to stay actions by creditors that will interfere with the court's ability to manage the proceeding. When a claimant is affected by the stay, the claimant challenges the effect in the bankruptcy court and if the result is unfavorable, it appeals. The claimant does not file a separate proceeding in a separate court to determine whether the stay should apply, as the United States has done in this case.

Finally, the state rehabilitation court is uniquely qualified to hear these claims. It has the most familiarity with the rehabilitation proceeding and the applicable state statutes. Thus, the principles of *Burford* require abstention in this case to permit resolution of the United States' claims through the available mechanisms in the state rehabilitation proceedings.

For the foregoing reasons, I will grant petitioner's motion to remand this case to the Circuit Court for Dane County. Because I conclude that removal was improper, I will not address the United States' motion for dissolution of the supplemental injunction.

## ORDER

IT IS ORDERED that petitioner Theodore K. Nickel's motion to remand, dkt. # 12, is GRANTED and this case is REMANDED to the Circuit Court of Dane County for lack of subject matter jurisdiction. The clerk of court is directed to transmit the file to the Circuit Court of Dane County.