**WIRTZ CORPORATION d/b/a Judge & Dolph, Ltd., Plaintiff,**

v.

**UNITED DISTILLERS & VINTNERS NORTH AMERICA, INC., Defendant.**

**No. 99–3161.**

United States District Court, C.D. Illinois, Springfield Division.

Oct. 15, 1999.

**1064**

Herman G. Bodewes, *Giffin Winning Cohen* & Bodewes, Springfield, IL, David S. Americus, Gozdecki & Del Guidice, Chicago, IL, for plaintiff.

J. William Roberts, Hinshaw & Culbertson, Springfield, IL, Mark L. Yeager, McDermott Will & Emery, Chicago, IL, for defendant.

### *OPINION*

SCOTT, District Judge.

This cause is before the Court on Plaintiff Wirtz Corporation's, d/b/a Judge & Dolph, Ltd. (J & D), motion to remand this action against Defendant United Distiller & Vintners North America, Inc. (UDVNA) to the Illinois Liquor Control Commission (ILCC). UDVNA removed this action from the ILCC to this Court on diversity grounds pursuant to 28 U.S.C. § 1441. J & D moves to remand this case on the basis that the action before the ILCC is not subject to removal. For the reasons stated below, the motion to remand is DENIED.

Plaintiff J & D, an unincorporated division of Wirtz Corporation, is a licensed wholesale distributor of adult beverage products in Illinois. UDVNA is an importer and manufacturer of distilled spirits and wines. Wirtz is a resident of Illinois. UDVNA is a resident of Connecticut. Since 1996, J & D has served as exclusive distributor in the State of Illinois of certain adult beverage products imported or manufactured by UDVNA, pursuant to certain written distributorship agreements between UDVNA and J & D.

In late 1998, J & D notified UDVNA that it intended to downsize and consoli-

date its two separate off-premise sales groups and that its sales personnel would henceforth sell directly competing products. On March 1, 1999, J & D effected the changes in its off-premise sales force structure. On May 19, 1999, UDVNA commenced an action in the U.S. District Court for the District of Connecticut [1] seeking a declaration that J & D's sales force reduction and consolidation breached the agreements and that UDVNA is entitled to appoint one or more additional distributors in Illinois in order to mitigate its damages resulting from the breach. The Connecticut action is currently pending.

On May 21, 1999, Illinois Governor Ryan signed into law the Illinois Wine and Spirits Industry Fair Dealing Act of 1999, Public Act 91–2, 815 ILCS 725/1 et seq., (the "Fair Dealing Act"), commonly known as the Wirtz Law in recognition of Wirtz's leading role in lobbying for its passage. The Fair Dealing Act applies to virtually all agreements between suppliers and distributors of wine and distilled spirits, including those that pre-date the Fair Dealing Act. In the case of pre-existing agreements, the Fair Dealing Act prohibits suppliers from terminating or failing to renew such agreements except in the exercise of good faith.

On July 8, 1999, J & D filed a petition before the ILCC alleging that UDVNA violated the Fair Dealing Act by considering the appointment of additional distributors for UDVNA products in Illinois, and seeking an order prohibiting UDVNA from adding other Illinois distributors. On July 9, 1999, J & D's counsel wrote to the ILCC's counsel requesting that the ILCC issue an order at its scheduled July 14, 1999, meeting in Springfield, Illinois, prohibiting UDVNA from appointing one or more additional distributors, and requiring UDVNA to continue supplying J & D at prices and quantities in effect prior to .the filing of its petition, until the matters in dispute between the parties are determined by an order that is final and non-reviewable.

On July 13, 1999, before the ILCC had taken any action on the petition, UDVNA removed the case to this Court. Shortly thereafter, UDVNA filed in this Court a motion to dismiss, transfer or stay the action (d/e 4) based on the pendency of the Connecticut action. On August 2, 1999, J & D moved to remand the case to the ILCC and to stay consideration of UDVNA's motion to dismiss, transfer, or stay (d/e 6, 8).

## BACKGROUND

UDVNA claims the action before the ILCC is a contract action, between diverse parties and exceeding seventy-five thousand dollars, and is removable to this Court. 28 U.S.C. § 1441(a).[2] J & D claims that only actions pending in State court may be removed and that the ILCC is not a "State court" but a state agency.[3]

---

**1.** The forum selection clause of the agreements provides that in the event of a dispute between the parties, which is the subject of litigation, the appropriate forum is the Federal Court in the State of Connecticut.

**2.** 28 U.S.C. § 1441(a) provides:
any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending...

**3.** J & D also claims that this action was removed to the wrong court. Under the general venue statute, 28 U.S.C. § 1391, an action brought against a state administrative agency may properly be brought in any district in which the agency maintains an office. *Jackson v. Illinois Criminal Justice Information Authority*, 1992 WL 67818, 1992 U.S. Dist LEXIS 5419 * 2 (N.D.Ill.1992). By analogy, for section 1441(a) removal purposes, an action is "pending" in any district in which the administrative agency from which a defendant seeks to remove the action has an office. The ILCC maintains offices in both Chicago (Northern District) and Springfield (Central District). *See* ILCS 5/3–11. UDVNA has the option of removing the action either to the Northern or to the Central District of Illinois. Moreover, J & D sent the Commission a written request that it issue an order on

Thus, the question before the Court is whether the ILCC is a "State court" from which the action may be removed.

The Seventh Circuit Court of Appeals has addressed the issue of whether a state agency is a State court for removal purposes. *Floeter v. C.W. Transport, Inc.,* 597 F.2d 1100 (7th Cir.1979). In *Floeter,* employees filed an action against their employer and their local union before the Wisconsin Employment Relations Commission (WERC) alleging breach of contract and unfair representation. The district court held that the WERC was a "State court" for the purposes of the removal statute. The Seventh Circuit Court of Appeals, in affirming the district court, found that the WERC procedures were "substantially similar to those traditionally associated with the judicial process," and the "state's interest in providing a convenient and expeditious tribunal to adjudicate the rights and interests of the parties... [did] not outweigh the defendant's right to remove the action to federal court." *Floeter,* 597 F.2d at 1102.

■ The *Floeter* Court articulated a functional as opposed to a literal test for determining whether a state administrative body is a State court for purposes of remand. The *Floeter* Court held that "the title given a state tribunal is not determinative; it is necessary to evaluate the functions, powers, and procedures of the state tribunal and consider those factors along with the respective state and federal interests in the subject matter and in the provision of a forum." *Id.,citing, Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Bd.,* 454 F.2d 38, 44 (1st Cir. 1972).

### FUNCTION, POWERS, AND PROCEDURES OF THE ILCC

The first part of the *Floeter* test requires the Court to evaluate the functions, powers, and procedures of the state tribu-

nal. ILCC's functions are governed primarily by the Liquor Control Act, 235 ILCS 5/1–1 et seq. The Liquor Control Act authorizes the ILCC to issue and revoke licenses to manufacturers, importers, distributors, and retailers and otherwise enforce the Liquor Control Act (*e.g.,* setting standards of manufacture, inspection of premises where alcoholic liquors are manufactured, distributed, or sold).

The ILCC is further empowered under the Fair Dealing Act to enforce and administer its provisions. Sections 15 through 30 of the Fair Dealing Act govern "all agreements between a distributor and a supplier ... entered into after the effective date of [the Act]." Fair Dealing Act, *Sec. 10(d).* The agreements between J & D and UDVNA pre-date the Fair Dealing Act and are not governed by Sections 15 through 30. Section 35 "clarifies existing rights and obligations and establishes remedial procedures," for those parties registered under the Liquor Control Act, and applies to the agreements between J & D and UDVNA. *Sec. 35(a).* Section 35(b) provides that "[u]nder the existing obligation to act in good faith, no registration or obligation to register under Section 6–9 [of the Liquor Control Act] may be terminated, nor may a supplier ... fail to renew or extend a product, name, brand, registration, or an agreement with a distributor except by acting in good faith in all aspects of the relationship, without discrimination or coercion...."

In order to enforce the obligation of good faith, Section 35(c) provides that the ILCC has the following powers:

(1) Prohibit or suspend any supplier ... found to have flagrantly or repeatedly violated the obligation described in this Section from selling any product or products governed under the Liquor Control Act of 1934 and the Twenty–First Amendment to the

---

the petition at its meeting in Springfield on July 14, 1999. Therefore, the Court finds that, under section 1441(a), the U.S. District

Court, Central District of Illinois in Springfield, Illinois, is the court "embracing the place where such action is pending."

United States Constitution in Illinois.

(2) Order the supplier ... to continue providing products to a distributor at prices and quantities in effect for the distributorship prior to any termination or failure to renew that becomes the subject of a dispute or administrative proceeding under this Section until the matters in dispute are determined by an order which is final and non-reviewable.

Orders entered pursuant to Section 35(c) of the Fair Dealing Act are considered emergency orders and are subject to review by the Illinois circuit courts under the terms of the Administrative Review Law, 735 ILCS 5/3-101 et seq., *Sec. 35(c), (e)*. In accordance with the Administrative Review Law, the findings and conclusions of the ILCC shall be held to be prima facie true and correct. *Sec. 35(e)*.

### ANALYSIS

■ The ILCC acts as a court when adjudicating disputes under Section 35 of the Fair Dealing Act. The ILCC must apply contract Illinois law to determine, based on the facts and evidence presented to it, whether a supplier breached its legal duty to exercise good faith. To make this determination, the ILCC will necessarily analyze all aspects of the contractual relationship (*e.g.*, adequacy of consideration, breach of contract, anticipatory breach). The factual and legal analysis required to make such determinations is traditionally a function of the courts. Further, the ILCC's findings of fact and conclusions of law are deemed to be prima facie true and correct by the reviewing courts. *Sec. 35(e)*.

Section 35 also empowers the ILCC to exercise extraordinary equitable powers. The ILCC can effectively require specific performance of the pre-existing contract upon a finding that the supplier did not act in good faith. *Sec. 35(c)(2)*. The ILCC can order the supplier to continue to supply the distributor at the prices and quantities in effect prior to any termination or failure to renew. *Id.* The remedy of specific performance, however temporary, exceeds even the power of a court in this type of contract.

Moreover, the equitable relief ordered by the ILCC remains in effect "until the matters in dispute are determined by an order which is final and *non-reviewable*." (Emphasis added) *Sec. 35(c)(2)*. Such power is extraordinary. Even if a reviewing court overturns the findings of the ILCC, the injunction remains in effect until a final and non-reviewable order is entered; in other words, the ILCC's ruling remains binding until the appeals process is exhausted. In a case where the ILCC finds that a supplier has not acted in good faith and orders the supplier to continue supplying under the terms of the prior contract, it is conceivable that the order of the ILCC will continue in effect for years—while the case is reviewed in the circuit court, then the Illinois appellate court, the Illinois Supreme Court, and finally the U.S. Supreme Court, pursuant to a writ of certiorari. Even if every court reverses the order of the ILCC, the Commission's order remains binding until the appeals process is exhausted, and the final *non-reviewable* order is entered.

The only options available to the supplier in such a case are either to comply with the ILCC's order and pursue a potentially lengthy review process or to disregard the ILCC's order and risk the revocation of its license to sell in Illinois. Although the ILCC has always had the power to revoke licenses, and that power is consistent with that of an administrative body (rather than a court), the ILCC now has the power to make its revocations extend beyond contrary decisions by the State circuit and appellate courts. This additional unique, injunctive power transforms the ILCC into a court-like body. The ILCC is functioning effectively as a "Super Court"; its injunctive powers far exceed those of the Illinois circuit court. Generally, an Illinois circuit court's preliminary injunction can be overturned within weeks on an expedit-

ed interlocutory appeal. *See Illinois Supreme Court Rule 307.* Once it is overturned, the circuit court's injunction is no longer in effect.

Furthermore, the Fair Dealing Act effectively precludes parties from seeking relief in Illinois courts during the pendency of ILCC Section 35 proceedings. Under Section 35(f), "[n]o court shall enter a stay, restraining order, injunction, mandamus, or other order that has the effect of suspending, delaying, modifying, or overturning a Commission finding or determination under this Section before a full hearing and final decision on the merits of the Commission ruling, finding, or order." The provision elevates the ILCC above the typical administrative agency, placing it on a status equivalent to State courts. This is yet more evidence that the Fair Dealing Act grants the ILCC functional judicial authority in Section 35 proceedings.

In *RJ Distributing Co., Inc. v. Sutter Home Winery, Inc.,* 1999 WL 571009 (N.D.Ill.1999), Judge Coar addressed the same question that is before this Court: Whether the ILCC is a State court for purposes of remand. Judge Coar noted that "Section 35(c)(2) permits the ILCC to enter only a temporary order until a final non-reviewable order is entered," and that "[c]ourts of law may order damages, permanent injunctions, and other relief." *Id.* *2. Judge Coar concluded that because "the ILCC is not authorized to provide full judicial relief, it is not functionally a court." *Id. citing Sun Buick, Inc. v. Saab Cars USA, Inc.,* 26 F.3d 1259, 1265 (3rd Cir.1994). This Court agrees that the breadth of the ILCC's remedial powers is not the same as a court in that it cannot award damages, costs, or attorney's fees. However, the Court finds that the potential effect of the so-called "temporary order" is so severe that the ILCC's authority must be characterized as judicial power.

Accordingly, the Court finds that the functions, powers, and procedures of the ILCC are similar to, and even exceed, those associated with the judicial process,

at least with respect to the injunctive relief permitted under the Fair Dealing Act.

### RESPECTIVE STATE AND FEDERAL INTERESTS

■ The second part of the *Floeter* test requires a court to examine whether the state interest in the provision of a specific forum for adjudication of the removed action is substantially greater than the state's interest in maintaining any court system and whether it outweighs defendant's interest in removing the action to federal court. *Floeter,* 597 F.2d at 1102.

Generally, Illinois has an interest in the regulation of alcohol across its borders. Section 2 of the 21st Amendment provides that "[t]he transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." Congress has recognized the state's interest by explicitly prohibiting violations of state laws regulating the transportation of alcohol into a state. 27 U.S.C. § 122. The purpose of the Fair Dealing Act is set forth in Section 10: "The Act is enacted pursuant to the authority of the State of Illinois and under the provisions of the 21st Amendment to the United States Constitution to promote the public's interest in fair, efficient, and competitive distribution of wine and liquor products." *Sec. 10(a)(ii).*

Nonetheless, the state's interest in adjudicating this dispute before the ILCC is not significantly greater than the state's interest in maintaining any forum or UDV-NA's interest in removing the action to federal court. This case essentially involves only the application of contract law of good faith to determine whether a violation of the Fair Dealing Act has occurred. The case does not involve any significant interpretation of the language or meaning of the Fair Dealing Act that would require determination in a special forum. There is no reason to believe a court lacks the ability or capacity to determine the issues

involved here. Both contract actions and actions involving the distribution of alcohol within the state have regularly been brought in State and Federal courts. Indeed, Section 25 of the Fair Dealing Act, although not applicable to pre-existing agreements, provides: "[p]arties to a distributorship may bring an action in any court of competent jurisdiction for damages sustained as a consequence of the violation, and may also be granted injunctive relief against unlawful termination, cancellation, nonrenewal, or other harm." Thus, the Illinois legislature foresaw that the courts could adjudicate such disputes under certain provisions of the Act. Ultimately, UDVNA has the right of any litigant in a civil action. Forcing UDVNA to proceed before the ILCC would negate its right to remove the action to federal court. The Court finds that UDVNA has the right to have the good faith determination decided in a federal forum even if, in removing, it deprives J & D of a procedural or remedial advantage.

Accordingly, the Court finds that the ILCC is a State court for removal purposes, and that the state's interest in providing a specific forum is not substantially greater than the state's interest in maintaining any court system and does not outweigh J & D's right to remove this action to federal court. *Floeter*, 597 F.2d at 1102.

### ABSTENTION

Alternatively, J & D moves the Court to decline to exercise jurisdiction based on abstention principles. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996), *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

■ The *Burford* abstention doctrine applies in two alternative circumstances. *Int'l College of Surgeons v. City of Chicago*, 153 F.3d 356, 361–362 (7th Cir.1998). First, a federal court should "abstain from deciding 'difficult questions of state law

bearing on policy problems of substantial public import whose importance transcends the result in the case at bar.'" *Id.* at 362, *quoting, Quackenbush*, 517 U.S. at 726–727, 116 S.Ct. 1712. Second, a federal court should "abstain from the exercise of federal review that 'would be disruptive to state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *Id.* J & D contends that both types of *Burford* abstention apply to this case.

■ There is no question that the Fair Dealing Act reflects important Illinois policy concerning the regulation of the manufacture, sale, and distribution of liquor within the state. However, the issues in this case can hardly be characterized as a "difficult question of state law." *Quackenbush*, 517 U.S. at 726–727, 116 S.Ct. 1712. This case essentially involves the application of contract law of good faith to determine whether a violation of the Fair Dealing Act has occurred. The case does not involve an interpretation of the language or meaning of the Fair Dealing Act. As the Seventh Circuit has articulated, "*Burford* abstention is rarely, if ever, appropriate when 'the state law to be applied appears to be well settled.'" *Int'l College of Surgeons*, 153 F.3d at 362, *citing Colorado River*, 424 U.S. at 815, 96 S.Ct. 1236. "[A] district court must not decline jurisdiction where its exercise 'would ... not require the district court to guess at the resolution of uncertain and difficult issues of state law.'" *Id. citing, Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 187, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959).

The instant case requires no guesswork or prediction of how the state law should be applied. The state law of contracts is well settled. The district court may apply the law of good faith obligations with the same competence as any State court. *See also, Property & Cas. Ins. Ltd. v. Central Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 322 n. 5 (7th Cir.1991) (holding that the first category of *Burford* abstention did not apply because "the underlying issues require

only basic principles of contract interpretation and do not implicate the concerns that the Supreme Court relied upon in *Burford.*").

■ The second type of *Burford* abstention is appropriate in those cases where the exercise of federal review would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Quackenbush,* 517 U.S. at 726–727, 116 S.Ct. 1712. Again, there is no question that the Fair Dealing Act reflects an effort by the state to establish a coherent policy regarding the regulation of the manufacture, sale, and distribution of liquor within the state. However, in order to warrant abstention the court must find two essential elements:

> [f]irst, and most obvious, the state must offer some forum in which claims may be litigated ... Second, that forum must be special—it must stand in a special relationship of technical oversight or concentrated review to the evaluation of those claims. The ability to point to a specialized proceeding is a prerequisite of, not a factor in, the second type of *Burford* abstention.

*Int'l College of Surgeons,* 153 F.3d at 363–64, *quoting Property & Cas. Ins. Ltd.,* 936 F.2d at 323.

There is no indication that the proceeding before the ILCC is "specialized" in the sense that it would differ significantly from a proceeding in any court. The state's mere use of the ILCC to hear contract claims is not enough to warrant abstention. There is no "special relationship of technical oversight" that the ILCC would use to analyze relatively straightforward issues of good faith obligations in reviewing the contract between supplier and distributor.

The judicial review process further demonstrates the lack of a "special forum." For example, in *Burford* the Texas legislature deliberately chose to concentrate the judicial review of the railroad commission's orders regarding the allocation of oil rights in one district court. Contrast *Burford* with *Int'l College of Surgeons,* where the decisions of a local landmark commission were reviewed under the Illinois Administrative Review Act, and under that Act, any court of general jurisdiction in the county in which the agency sits may review the final decision. Moreover, the standard of review employed by the circuit court in *Int'l College of Surgeons* in evaluating the landmark commission decisions was subject to the deferential standards of the Illinois Administrative Review Act, as opposed to the standard of review in *Burford* where the district court had the power to review de novo and had the power to formulate new standards for the commission's administrative practice. For a thorough comparison between the two cases, *see Int'l College of Surgeons,* 153 F.3d at 364–365.

The case before this Court is akin to *Int'l College of Surgeons,* Section 35(e) of the Fair Dealing Act provides that "[o]rders entered by the Commission under this Section shall be reviewable by the Circuit Court under the terms of the Administrative Review Law." There is no special relationship between the ILCC and the circuit courts of Illinois through which these courts would "acquire a specialized knowledge" regarding regulation of liquor distribution. *Int'l College of Surgeons,* 153 F.3d at 364. The Fair Dealing Act indicates a deferential standard of review, stating that "findings and conclusions of the Commission shall be held to be prima facie true and correct." *Sec. 35(e).* Thus, unlike the situation in *Burford,* the administrative review scheme at issue in this case does not recognize any specialized expertise in the circuit courts of this state. Therefore, because J & D is unable to point to the type of specialized forum found in *Burford,* the second type of the *Burford* abstention is also not appropriate.

## CERTIFICATION OF APPEAL

The decision to deny remand was based on the Court's application of the *Floeter* test. However, this Court recognizes that it came to the exact opposite decision as Judge Coar based on a similar set of facts.

Moreover, the *Floeter* opinion does not give the Court significant guidance as to what powers, functions, and procedures are characteristic of a State court as opposed to an administrative body, or what weight the district court should give each factor. For example, should the district court consider primarily the remedial powers (i.e., power, or lack of, to issue damages or injunctive relief), the functions (i.e., fact finding and legal analysis of contract issues) or the procedures of the administrative body (petition, hearing and review process). The Court further recognizes that if remand were granted, the federal litigation would be resolved.

The Court is therefore of the opinion that its decision involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. The Court therefore certifies this matter for immediate appeal pursuant to 28 U.S.C. § 1292(b).

*Therefore,* J & D's Motion to Remand Matter to the Illinois Liquor Control Commission is DENIED (d/e 6). This decision is hereby certified for appeal pursuant to 28 U.S.C. § 1292(b). All other motions in this case are stayed for ten (10) days to permit J & D time to file an application for interlocutory appeal. If the application is filed, the stay will continue in effect until the U.S. Court of Appeals for the Seventh Circuit decides whether to permit the interlocutory appeal. If the appeal is granted, the stay will continue until the appeal is resolved.