In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4079

WIRTZ CORPORATION, d/b/a JUDGE & DOLPH, LTD.,

Plaintiff-Appellant,

v.

UNITED DISTILLERS & VINTNERS NORTH AMERICA,
INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-3161--Jeanne E. Scott, Judge.

Argued February 17, 2000--Decided July 31, 2000

Before HARLINGTON WOOD, JR., COFFEY, and RIPPLE,
Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge. The district
judge, recognizing that this case was unique and
involved a controlling question of law as to
which there is substantial ground for difference
of opinion, entered the requisite order on
October 15, 1998, for an interlocutory appeal
under 28 U.S.C. sec. 1292(b)./1 Judge & Dolph
("J & D") made timely application to this court.
This court also recognized the unique question of
law and in its discretion permitted this
interlocutory appeal. Before identifying that
question of law we shall first identify the
parties and explain the origins of this dispute
as found by the district court.

Plaintiff J & D, a resident of Illinois, is an
unincorporated division of Wirtz Corporation, and
a licensed wholesale distributor of alcoholic
beverages in Illinois pursuant to the Illinois
Liquor Control Act of 1934 ("Liquor Control
Act"), 235 Ill. Comp. Stat. 5/1-1, et seq. (West
1999). Defendant United Distillers & Vintners
North America, Inc., ("UDVNA"), a resident of
Connecticut, is an importer and manufacturer of
distilled wine and spirits. It is a wholly owned
subsidiary of Diageo plc, a company based in the
United Kingdom. Since January 1996, J & D has
been the exclusive distributor for UDVNA of

certain of its spirits and wines within the State of Illinois pursuant to written distribution agreements. The agreements provided that J & D could not be terminated as UDVNA's exclusive Illinois distributor for the initial seven years of the agreement, except for certain "good causes," including noncompliance with the agreement, J & D's insolvency, conviction of crime, loss of license, etc. Pursuant to sec.sec. 6-9 of the Liquor Control Act, UDVNA registered with the Illinois Liquor Control Commission ("ILCC"), and filed registration statements designating J & D as its exclusive Illinois distributor.

Then, in 1998, the Illinois General Assembly began consideration of legislation to become known as the Illinois Wine and Spirits Industry Fair Dealing Act of 1999 (the "Fair Dealing Act"), 815 Ill. Comp. Stat. 725/1 to 725/99. That Act, which governs the relationships between distributors and suppliers of alcoholic beverages in Illinois, purports to be enacted "pursuant to authority of the State of Illinois and under the provisions of the 21st Amendment to the United States Constitution to promote the public's interest in fair, efficient, and competitive distribution of wine and liquor products." 815 Ill. Comp. Stat. 725/10(a)(ii).

The Fair Dealing Act was controversial from the beginning, and is commonly referred to as "The Wirtz Law" because of plaintiff's active support of its passage. A recent case of this court also involving liquor supplier and distributor relationships under the Act, although not the precise issue of this interlocutory appeal, contains some helpful background./2 The constitutional issues there raised were left for another day. Nor do we need to pass on the constitutionality of the Act as that issue was not raised here. Ours is only the interlocutory issue involving procedure and jurisdiction.

The problems in the present case started when J & D notified UDVNA that it intended to downsize and consolidate its separate Illinois sales groups which would then sell products competing with the products of UDVNA. On March 1, 1999, J & D did that over the objections of UDVNA. UDVNA responded with a suit in the U.S. District Court for the District of Connecticut, the choice of forum specified by the agreements. UDVNA in that court sought a declaration that J & D's sales force reduction and consolidation breached their agreements and that therefore UDVNA was free to appoint additional distributors in Illinois to mitigate its damages resulting from the alleged breach.

After the Fair Dealing Act, which prohibited

suppliers from terminating or failing to renew agreements except in the exercise of good faith, became effective on May 21, 1999, J & D took advantage of the new act on July 8, 1999, by filing a petition with the ILCC. J & D claimed that UDVNA had violated the Fair Dealing Act by threatening to appoint additional Illinois distributors in spite of the exclusive provisions of their agreements. J & D sought an order from the ILCC prohibiting the action threatened by UDVNA. Before the ILCC acted on J & D's petition, UDVNA removed this case to the U.S. District Court for the Central District of Illinois pursuant to 28 U.S.C. sec. 1441(a). UDVNA followed removal with a motion in the district court to dismiss, transfer, or stay the J & D action because of UDVNA's pending Connecticut action. Shortly thereafter J & D moved to remand the removed case back to the ILCC and to stay consideration of UDVNA's motion. J & D's motion to remand was denied by the district court on October 15, 1999, in a carefully-worded opinion previously cited. In that opinion the district court certified the issue it had just decided, which is now the subject of this interlocutory appeal.

The district court held that UDVNA had the right to remove the proceedings filed by J & D with the ILCC. Under 28 U.S.C. sec. 1441(a), a case may be removed to the federal district court provided it is a civil action brought in state court over which the district court could have had original jurisdiction. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 345, 355-56 (1988) (citing Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 344-45 n.9 (1976)) (holding that a district court has no discretion to decline to accept a removed diversity jurisdiction case). In this present case there is diversity under 28 U.S.C. sec. 1332(a) as J & D is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Illinois, whereas UDVNA is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business in that state. The amount in controversy exceeds $75,000 as required by 28 U.S.C. sec. 1332(4)(b). The issue quickly becomes whether or not the ILCC qualifies as a court for removal purposes.

The district court concluded that the ILCC was a "state court," not merely a state regulatory agency. It relied on our case, Floeter v. C.W. Transport, Inc., 597 F.2d 1100 (7th Cir. 1979). That was a suit before the Wisconsin Employment Relations Commission ("WERC") brought by employees against their employer and their local union alleging breach of contract and unfair

representation. We held the WERC was a "state court" for removal purposes on the basis that WERC procedures were "substantially similar to those traditionally associated with the judicial process," and that the "state's interest in providing a convenient and expeditious tribunal to adjudicate the rights and interest of the parties . . . [did] not outweigh the defendant's right to remove the action to federal court." Floeter, 599 F.2d at 1102. We further held that "the title given a state tribunal is not determinative; it is necessary to evaluate the functions, powers, and procedures of the state tribunal and consider those factors along with the respective state and federal interests in the subject matter and in the provision of a forum." Id. The district court endeavored to apply that analysis. We shall endeavor to do the same, but we requested and received an amicus curiae brief from the Attorney General of Illinois which the district court did not have. The amicus brief was also served on each of the parties, but this court received no response to the amicus brief from either party.

The Liquor Control Act authorizes the ILCC to issue and revoke the liquor licenses of manufacturers, inspectors, distributors and retailers, and beyond that to generally enforce the Act. 235 Ill. Comp. Stat. 5/3-12. Those responsibilities include setting standards of manufacturing and the inspection of premises where alcoholic liquors are manufactured, distributed, or sold. Under the subsequent Fair Dealing Act, as the district court set forth, the ILCC is responsible for enforcement, one section of which, sec. 725/35, governs the agreements between J & D and UDVNA. 815 Ill. Comp. Stat. 725/35. Section 35(b) provides that "[u]nder the existing obligation to act in good faith, no registration or obligation to register under Section 6-9 [of the Liquor Control Act] may be terminated, nor may a supplier . . . fail to renew or extend a product, name, brand, registration, or an agreement with a distributor except by acting in good faith in all aspects of the relationship, without discrimination or coercion . . . ." In order to enforce the obligation of good faith, sec. 35(c) provides that the ILCC has the following powers:

(1) Prohibit or suspend any supplier . . . found to have flagrantly or repeatedly violated the obligation described in this Section from selling any product or products governed under the Liquor Control Act of 1934 and the Twenty-First Amendment to the United States Constitution in Illinois.

(2) Order the supplier . . . to continue providing

products to a distributor at prices and quantities in effect for the distributorship prior to any termination or failure to renew that becomes the subject of a dispute or administrative proceeding under this Section until the matters in dispute are determined by an order which is final and non-reviewable.

Orders entered pursuant to sec. 35(c) of the Fair Dealing Act are considered emergency orders and are subject to review by the Illinois circuit courts under the terms of the Administrative Review Law, 735 Ill. Comp. Stat. 5/3-101 et seq. 815 Ill. Comp. Stat. 725/35(c), (e). In accordance with that Act, the findings and conclusions of the ILCC on appeal are to be held prima facie true and correct. sec. 725/35(e).

The district court proceeded to find that the ILCC, when adjudicating disputes under sec. 35 of the Fair Dealing Act, was acting as a court--the critical issue in this interlocutory appeal. The ILCC would be applying Illinois contract law in determining if a supplier had breached its legal duty to exercise good faith. That determination would involve the application of the ordinary elements of contract law. The district court found the responsibilities of the ILCC to be those of a court. In addition, the district court particularly noted that sec. 35 grants the ILCC certain extraordinary equitable powers. The ILCC can require specific performance of the preexisting contracts if it finds the supplier did not act in good faith. The supplier can then be ordered to continue to supply its products to the distributor at the same prices and in the same quantities as were in effect prior to any termination or failure to renew. The district court noted those remedies exceeded the powers of any court. Furthermore, the court found that an ILCC order can remain in effect even in the face of interim appellate reversals until such time as a final judicial order is entered; the parties are precluded from seeking any judicial relief whatsoever during the pendency of the ILCC proceedings. Those powers, in the view of the district court, transform the ILCC into a "Super Court" as its powers exceed those of an Illinois circuit court. There is one case to the contrary as noted by the district court. In R.J. Distributing Co., Inc. v. Sutter Home Winery, Inc., No. 99-C-3836, 1999 WL 571009 (N.D. Ill. July 29, 1999), the ILCC was found not to be a court because, in spite of its extraordinary powers, the ILCC cannot award damages, costs, or attorney's fees. The district court in the present case concluded, however, that the requirements of Floeter had been sufficiently satisfied to characterize the ILCC as a court for federal removal purposes.

After finding the first part of the Floeter test had been satisfied, the district court considered whether the state's interest in providing a special forum for adjudication of this removed action is substantially greater than the state's interest in maintaining any court system, and whether it outweighs UDVNA's interest in removing the action to the federal court. The district court found that the state's interest in adjudicating this dispute before the ILCC not to be significantly greater than the state's interest in maintaining any judicial forum, and not greater than UDVNA's interest in removing the action to federal court. The district court saw this case as essentially the application of contract law and good faith principles to determine if a violation of the Fair Dealing Act had occurred, and found that did not require a special forum. No significant interpretation of the Fair Dealing Act would be involved. The district court further noted that a section of the Fair Dealing Act, 815 Ill. Comp. Stat. 725/25, though not applicable to pre-existing agreements, given the situation in the present case, does permit the parties to bring an action in any court of competent jurisdiction for damages and for injunctive relief. Accordingly, the district court found that UDVNA had the right to have the good faith determination resolved in a federal forum even if J & D, as a result, might lose some procedural or remedial advantage.

The district court also considered abstention principles and recognized that the Fair Dealing Act reflects important Illinois policy concerning the regulation of liquor manufacture, sale, and distribution within the state. The district court held, however, that a proceeding before the ILCC is not so "specialized" as to distinguish it from a similar proceeding in any court so as to warrant abstention, and there was no difficult question of state law to be decided. The district court also found abstention would not be warranted on the grounds that a court proceeding might be disruptive of state efforts to establish a coherent policy regarding a matter of substantial state concern. See Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996); Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); Burford v. Sun Oil Co., 319 U.S. 315 (1943); Int'l College of Surgeons v. City of Chicago, 153 F.3d 356 (7th Cir. 1998).

The district court denied remand based on the application of this court's Floeter test and certified the issue for appeal, in part, because of the conflict with R.J. Distributors Co., Inc. v. Sutter Home Winery, Inc., cited above. The potential effect of the so-called "temporary

order" available for use by the ILCC was seen as "so severe" and to exceed judicial power to the extent that the ILCC's authority should be characterized as judicial in spite of the fact it cannot award damages, costs, or attorney's fees. It was also found that the state's interests in providing a specific forum for these matters relating to alcoholic beverages did not outweigh UDVNA's request to remove the case to federal court.

Analysis

The district court's analysis was thorough in its effort to apply Floeter in consideration of the removal issue upon which we agreed there could be substantial grounds for differences of opinion. The correctness of that view is now apparent as we must differ with the district court's holding.

It can be argued, contrary to the district court's finding, considering the extraordinary powers bestowed on the ILCC, that it cannot be considered a court for removal purposes. Since the legislature bestowed on the ILCC, an executive branch agency, powers which no other regular court possesses, it cannot be a court. The ILCC, in spite of its other broad powers, however, cannot, for instance, conduct a jury proceeding which would otherwise be available in a state court for this contract dispute. That a specialized state regulatory commission can issue certain business licenses and then for good statutory causes take back what it has issued, does not transform the ILCC into a court for removal purposes, nor are the federal provisions for diversity jurisdiction enough for that purpose./3 The ILCC was created sixty-five years ago by the Illinois legislature providing for its members to be appointed by the governor. These members need not be lawyers and are not required to serve full time. The constitutionality of the Fair Dealing Act may be questionable, but that is not before us in this interlocutory appeal.

We need to examine in greater detail our Floeter decision. A number of employees of the defendant transportation company filed their complaint with the WERC charging that the employer company conspired to give "super-seniority" status to two other company employees in violation of the collective bargaining agreement. The company removed the case under 28 U.S.C. sec. 1441(a) to the district court. Since it was conceded that the action involving a collective bargaining agreement fell within the jurisdiction of the district court, the only issue was whether the WERC was a "state court" for removal purposes. Floeter, 597 F.2d at 1101-

02. This court followed the decision of Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Board, 454 F.2d 38, 44 (1st Cir. 1972), in finding the WERC qualified as a court. We noted that it was a breach of contract and unfair representation action and could have been brought in either federal or state court as alternative forums. However, no matter in which forum that labor matter would have been filed, the labor issue would have to be determined by federal law, not state law. This court also stressed that the holding was limited by the particular facts of that case. Floeter, at 1102. It was made clear that "[o]ther actions brought before the agency may involve different state and federal interests, or a different agency role, and a weighing of the competing interests in those cases might well result in a determination that those cases cannot be properly removed." Id. We find the present case to be one of those other cases in which the weighing of the competing interests results in a different conclusion not sanctioning removal to federal court.

In the present case no federal law is directly involved in the merits of this contract dispute, but federal law nevertheless influences our view that the diversity jurisdiction process is outweighed by the state's interest in administering its own alcoholic beverages program. The Twenty-First Amendment to the United States Constitution provides in Section 2 that "[T]he transportation or importation into any State . . . of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." Congress clearly recognized, following the repeal of the Eighteenth Amendment, the significant interests of the individual states in the matter of alcoholic beverages. How the state regulates and administers the alcoholic beverages program doubtless will not satisfy everyone, but within constitutional limitations, it is state business, not federal. This case constitutes one of the exceptions this court foresaw in Floeter. The Constitution does not sanction unwarranted intrusions into state matters without a justifiable constitutional basis even if the federal government might believe it could do as well or better./4

Therefore, in this interlocutory appeal, having answered the controlling issue of law contrary to the holding of the district court, we now reverse and remand to the district court in turn to remand the case back to the ILCC from which it came.

/1 Wirtz Corp. v. United Distillers & Vintners North
America, Inc., 69 F.Supp.2d 1063 (C.D. Ill.
1999).

/2 Kendall-Jackson Winery, Ltd. v. Bransen, Chairman
of the Illinois Liquor Control Commission and
Wirtz Corporation, d/b/a Judge & Dolph, Ltd., 212
F.3d 995 (7th Cir. 2000).

/3 The Long Range Plan for the Federal Courts, 1995,
was prepared under the auspices of the Judicial
Conference of the United States and was
thereafter approved by the Conference for future
administrative action and policy development. The
Plan recommended that "Congress should be
encouraged to seek reduction in the number of
federal court proceedings in which jurisdiction
is based on diversity of citizenship . . . ."
Judicial Conference of the United States, The
Long Range Plan for the Federal Courts 29-30
(1995).

/4 See Marcia Coyle and Harvey Berkman, A Court
Revolution Brewing?, Nat'l L.J., June 5, 2000, at
A1, A9, for an interesting, current discussion of
federalism in the Supreme Court.

  RIPPLE, Circuit Judge, concurring. As the court
correctly points out, the question in this case
is whether the ILCC qualifies as a "state court"
for purposes of 28 U.S.C. sec. 1441(a). See ante
at 4. Also, the majority appropriately grounds
its analysis in our decision in Floeter v. C.W.
Transport, Inc., 597 F.2d 1100 (7th Cir. 1979)
(per curiam). In Floeter, we held that, when
analyzing whether a state tribunal is a "state
court" for purposes of the federal removal
statute, "the title given [the] state tribunal is
not determinative" and that, instead, "it is
necessary to evaluate the functions, powers, and
procedures of the state tribunal and consider
those factors along with the respective state and
federal interests in the subject matter and in
the provision of a forum." Floeter, 597 F.2d at
1102 (citing Volkswagen de Puerto Rico, Inc. v.
Puerto Rico Labor Relations Bd., 454 F.2d 38, 44
(1st Cir. 1972)).

  Applying Floeter to the present action, the
court concludes that this action cannot be
removed to federal court because Illinois'
interest in the regulation and administration of
its "alcoholic beverages program"--an interest
made paramount by the Twenty-first Amendment to
the Constitution of the United States--outweighs

any federal interest in allowing removal to a federal court. Ante at 10-11. I, too, agree that Illinois' interest in the regulation of alcohol within its borders weighs heavily against allowing removal of this proceeding. I write separately, however, to emphasize that "the functions, powers, and procedures" of the ILCC, Floeter, 597 F.2d at 1102, do not make it a "state court" for purposes of 28 U.S.C. sec. 1441(a).

In short, I believe that it is clear that the ILCC's functions, powers, and procedures, taken as a whole, demonstrate that it is an administrative agency, not a court. To reach this conclusion, it is not necessary to look much further than the information about the ILCC that the majority has already provided. Generally speaking, the ILCC is merely a "specialized state regulatory commission." Ante at 9. The act that created the ILCC, the Liquor Control Act, "authorizes the ILCC to issue and revoke the liquor licenses of manufacturers, inspectors, distributors and retailers, and beyond that to generally enforce the Act," and "[t]hose responsibilities include setting standards of manufacturing and the inspection of premises where alcoholic liquors are manufactured, distributed or sold." Ante at 5 (citing 235 Ill. Comp. Stat. 5/3-12).

With the passage of the Fair Dealing Act, the ILCC has been given additional powers. Section 35 of that act gives the ILCC the power to "[p]rohibit or suspend any supplier" found to have "flagrantly or repeatedly" violated the obligation of good faith from selling alcoholic beverages in Illinois. 815 Ill. Comp. Stat. 725/35(c)(1). The ILCC also has the power to order the supplier "to continue providing products to a distributor at prices and quantities in effect for the distributorship prior to any termination or failure to renew that becomes the subject of a dispute or administrative proceedings under this Section until the matters in dispute are determined by an order which is final and non-reviewable." Id. 725/35(c)(2). Section 35(f) of the act provides that "[n]o court shall enter a stay, restraining order, injunction, mandamus, or other order that has the effect of suspending, delaying, modifying, or overturning a Commission finding or determination under this Section before a full hearing and final decision on the merits of the Commission ruling, finding, or order." Id. 725/35(f). These orders from the ILCC, nevertheless, are ultimately reviewable by Illinois circuit courts under the state's administrative procedure law. See id. 725/35(e).

The power the ILCC now wields under the Fair Dealing Act does not transform this regulatory agency into a state court. The ILCC's powers to suspend a supplier and to order the status quo pending the outcome of the agency's proceedings, although extraordinary powers, do not change the fundamental nature of the ILCC. It is still, foremost, a state administrative agency charged with the regulation of the distribution and sale of alcohol in Illinois.

Moreover, the action UDVNA wishes to remove to federal court stands in stark contrast with the action that was before us in Floeter. The removed action in Floeter was a dispute between several employees and their employer and local union. The plaintiffs had brought the action before the Wisconsin Employment Relations Commission ("WERC") "to enforce a collective bargaining agreement" that, under the Labor Management Relations Act, 29 U.S.C. sec. 185(a), "fell within the jurisdiction of the United States District Court." Floeter, 597 F.2d at 1101. "[B]asically," we said, the action was "a breach of contract and unfair representation action" that "would have been determined by federal law regardless of the forum in which it had been brought." Id. at 1102. The WERC's "procedures [were] substantially similar to those traditionally associated with the judicial process," and the Supreme Court of Wisconsin "ha[d] itself recognized that the WERC [was] vested with 'judicial power.'" Id. We also explained that Wisconsin's interest in providing an expeditious forum for resolving such disputes did not outweigh the defendants' right of removal. See id.

The action brought before the ILCC is more akin to the one the Court of Appeals for the Third Circuit confronted in Sun Buick, Inc. v. Saab Cars USA, Inc., 26 F.3d 1259 (3d Cir. 1994), in which a party sought to remove a good faith termination proceeding from the Pennsylvania Board of Motor Vehicle Manufacturers, Dealers and Salespersons (the "Pennsylvania Board of Vehicles" or the "Board"). Although the Third Circuit called Floeter's "functional test" into question, see id., 26 F.3d at 1261-64, that court nevertheless proceeded to hold that under the "functional test" the Pennsylvania Board of Vehicles was a "usual" administrative agency and not a state court for purposes of removal, id. at 1264-66. The court explained that the Board "administers and enforces" state law by "regulat[ing] the licensing of salespersons, dealers, brokers, and manufacturers." Id., 26 F.3d at 1264. "It passes on the qualifications for licensure, investigates allegations of wrongful acts, and brings criminal prosecutions

for unauthorized practices (i.e. acts like a prosecutor)." Id. at 1264-65. The court further noted that the powers of the Board were "circumscribed" in that, in addition to imposing disciplinary sanctions, it could only enjoin the termination of a franchise agreement or enjoin the addition or relocation of a motor vehicle dealer. Id. at 1265. Finally, the Third Circuit noted that the composition of the Board did not resemble a court in that its members were not necessarily lawyers, were often members of the executive branch of the state government, and were not necessarily disinterested. See id. at 1266.

Almost the same thing can be said of the ILCC, as is evident from the court's discussion of the ILCC's characteristics. The composition of the ILCC does not resemble a court; its commissioners need not be lawyers. See ante at 9. The ILCC's role is that of a specialized regulatory agency, and its powers are not those of a court of general jurisdiction. When looked at as whole, this administrative agency does not have the attributes of a court and therefore cannot be considered a court for purposes of sec. 1441(a). Cf. Sun Buick, 26 F.3d at 1264.

The removal statute should be construed narrowly and any doubts about the propriety of removing a particular action should be resolved against allowing removal. See Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993); Illinois v. Kerr-McGee Chem. Corp., 677 F.2d 571, 576 (7th Cir. 1982); see also Shamrock Oil & Gas Co. v. Sheets, 313 U.S. 100, 108-09 (1941) (stating that the removal statute should be construed strictly); In re Application of County Collector of the County of Winnebago, 96 F.3d 890, 895 (7th Cir. 1996) (same). Particularly relevant to our case is the fact that the statute allows defendants to remove only those civil actions "brought in a State court." 28 U.S.C. sec. 1441(a). In the present case, UDVNA has sought to remove to federal court a matter pending before a state administrative agency, an agency whose "functions, powers, and procedures" cannot be equated with those of a court. The ILCC simply is not a "state court" as contemplated by sec. 1441(a) and our decision in Floeter.